**TRACINDA CORPORATION, a Nevada Corporation, Plaintiff,**

v.

**DAIMLERCHRYSLER AG, a Federal Republic of Germany corporation; Daimler–Benz AG, a Federal Republic of Germany corporation; Juergen Schrempp, a citizen of the Federal Republic of Germany; Manfred Gentz, a citizen of the Federal Republic of Germany; Hilmar Kopper, a citizen of the Federal Republic of Germany, Defendants.**

**Glickenhaus & Co., et al., Plaintiffs,**

v.

**Daimlerchrysler AG, et al., Defendants;**

Nos. CIV.A.00–993–JJF, CIV.A.00–984–JJF, CIV.A.01–004–JJF.

United States District Court, D. Delaware.

March 22, 2002.

Joseph A. Rosenthal, Esquire, and Carmella P. Keener, Esquire of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Delaware. Of Counsel: Stephen Lowey, Esquire, Richard Bemporad, Esquire, David Harrison, Esquire, Thomas Skelton, Esquire, Lowey Dannenberg Bemporad & Selinger, P.C., White Plains, New York. Attorneys for Glickenhaus Plaintiffs.

A. Glichrist Sparks, III, Esquire, Alan J. Stone, Esquire, and Jessica Zeldin, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Of Counsel: Terry Christensen, Esquire, Mark G. Krum, Esquire, Steven J. Aaronoff, Esquire, and Mark I. Labaton, Esquire of Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, Los Angeles, California. William G. McGuinness, Esquire and Julie E. Kamps, Esquire of Fried, Frank, Harris, Shriver & Jacobson, New York, New York. Attorneys for Plaintiff Tracinda Corporation.

Jay W. Eisenhofer, Esquire, Abott A. Leban, Esquire, and Richard M. Donaldson, Esquire of Grant & Eisenhofer, P.A., Wilmington, Delaware. Of Counsel: Vincent R. Cappucci, Esquire, Johnston de F. Whitman, Jr., Esquire and Catherine Torell, Esquire, Entwistle & Cappucci LLP, New York, New York. Jeffrey A. Klafter, Esquire, Steven Mellen, Esquire and Stacy E. Osborne, Esquire of Bernstein Litowitz Berger & Grossmann LLP, New York, New York. Jeffrey W. Golan, Esquire and Samuel R. Simon, Esquire of Barrack Rodos & Bacine, Philadelphia, Pennsylvania. Attorneys for Co–Lead Plaintiffs, The Florida State Board of Administration, Municipal Employees Annuity and Benefit Fund of Chicago, Denver Employees Retirement Plan, Policemen's Annuity and Benefit Fund of Chicago, and Municipal Employees Annuity and Benefit Fund of Chicago.

Thomas J. Allingham II, Esquire, and Robert S. Saunders, Esquire, of Skadden, Arps, Slate, Meagher & Flom LLP, Wil-

mington, Delaware. Of Counsel: Jonathan J. Lerner, Esquire, J. Michael Schell, Esquire, Joseph N. Sacca, Esquire and Jacob E. Hollinger, Esquire of Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York. Attorneys for Defendants DaimlerChryler AG, Daimler–Benz AG, Jürgen Schrempp and Manfred Gentz.

Michael D. Goldman, Esquire and Peter J. Walsh, Jr., Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Of Counsel: Jeffrey Barist, Esquire, Douglas W. Henkin, Esquire, William R. Spiegelberger, Esquire, and Stacey B. Menaker, Esquire of Milbank, Tweed, Hadley & McCloy LLP, New York, New York. Attorneys for Defendant Hilmar Kopper.

## *OPINION*

FARNAN, District Judge.

Pending before the Court is a Motion To Dismiss (D.I.57)[1] filed by Defendants DaimlerChrysler AG, Daimler–Benz AG, Juergen Schrempp and Manfred Gentz (collectively, "Defendants").[2] By their Motion, Defendants seek to dismiss (1) the Complaint in *Tracinda Corp. v. Daimler-Chrysler AG et al.*, Civil Action No. 00–984–JJF (the "Tracinda Complaint"); (2) the Complaint in *Glickenhaus & Co., et al. v. DaimlerChrysler AG, et al.*, Civil Action No. 01–004–JJF[3] (the "Glickenhaus Complaint"); and (3) the First Amended Consolidated Class Action Complaint in *In re DaimlerChrysler Securities Litigation*, Master Docket No. 00–993–JJF (the

"Amended Class Complaint") (collectively "the Complaints"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and Section 21D of the Securities Exchange Act of 1934. For the reasons discussed, the Court will (1) deny Defendants' Motion To Dismiss the Glickenhaus Complaint; (2) grant Defendants' Motion To Dismiss the civil conspiracy claim alleged in the Tracinda Complaint, and deny the Motion To Dismiss the remaining claims in the Tracinda Complaint; and (3) grant Defendants' Motion To Dismiss the Amended Class Complaint.

## BACKGROUND

### I. Procedural Background

In November 2000, Plaintiff Tracinda Corporation ("Tracinda") filed its Complaint against Defendants alleging, among other things, violations of the securities laws in connection with the 1998 merger between Daimler–Benz and Chrysler Corporation. Thereafter, Plaintiff Glickenhaus & Co. and its related affiliates and clients ("Glickenhaus") filed a nearly identical complaint. In addition, 23 putative class action complaints were filed in this Court, Michigan, and New York alleging substantially similar facts and claims as the Tracinda and Glickenhaus Complaints.

The Michigan actions were transferred to this Court sua sponte by the United States District Court for the Eastern District of Michigan. The parties to the New

---

1. Since the filing of Defendants' Motion To Dismiss, the three cases referenced by Defendants have been consolidated into Civil Action No. 00–993–JJF. Accordingly, the Docket Numbers referenced in this Opinion correspond to the docket items listed on the consolidated docket in Civil Action No. 00–993–JJF, with the exception of the reference to Tracinda Corporation's Opening Brief (D.I.56) which was only filed in Civil Action No. 00–984–JJF.

2. Defendant Hilmar Kopper has filed a separate Motion To Dismiss. Accordingly, the Court will address Defendant Kopper's Motion by a separate Opinion.

3. Pursuant to a stipulation (D.I.91), Glickenhaus & Co. filed an Amended Complaint adding certain current and former clients of Glickenhaus & Co. as additional plaintiffs. (D.I.89).

York action subsequently agreed to transfer their action to this Court.

By Order dated March 30, 2001, the Court consolidated the putative class actions and appointed lead plaintiffs and lead counsel. On April 9, 2001, The Florida State Board of Administration, Municipal Employees Annuity and Benefit Fund of Chicago, Denver Employees Retirement Plan, Policemen's Annuity and Benefit Fund of Chicago, and Municipal Employees Annuity and Benefit Fund of Chicago as Lead Plaintiffs on behalf of the Class (collectively, "Class Plaintiffs") filed the Amended Class Complaint. Defendants' Motion To Dismiss all three actions followed.

On July 26, 2001, the Court consolidated the Glickenhaus, Tracinda and Class Action cases into Civil Action No. 00–993, the lead case. (D.I.87, 88). Thereafter, the parties completed the remaining briefing due on Defendants' Motion To Dismiss. Accordingly, the instant Motion is fully briefed and ripe for the Court's review.

## II. Factual Background

### A. *The Complaints*

Tracinda, Glickenhaus and the Class Plaintiffs (collectively, "Plaintiffs") have filed their respective Complaints in connection with the 1998 merger of Daimler–Benz and Chrysler Corporation ("Chrysler") that formed the combined entity known as DaimlerChrysler AG ("DaimlerChrysler" or "the Company"). By their Complaints, Plaintiffs allege federal securities laws claims under Sections 10(b), 14 and 20 of the Securities and Exchange Act of 1934 (the "Exchange Act") and Sections 11, 12, and 15 of the Securities Act of 1933 (the "Securities Act"). In addition, Tracinda alleges a claim for civil conspiracy, and Class Plaintiffs allege channel stuffing as an additional basis for their securities claims.

### B. *The Negotiations Between Daimler–Benz and Chrysler*

By their Complaints, Plaintiffs allege that in mid-January 1998, Defendant Jurgen Schrempp, the then chairman and chief executive officer of Daimler–Benz, contacted Robert Eaton, the then chairman and chief executive officer of Chrysler to discuss the possibility of a business combination. (Amended Class Cmplt. at ¶¶ 26, 27; Tracinda Cmplt. at ¶ 17; Glickenhaus Cmplt. at ¶ 18). Shortly thereafter, Mr. Eaton met with Kirk Kerkorian, the sole stockholder of Tracinda to discuss the proposed business combination. At that time, Tracinda was the owner of approximately 13.7% of Chrysler's common stock. (Tracinda Cmplt. at ¶ 17).

On February 12, 1998, Mr. Eaton and Mr. Schrempp again discussed the proposed business combination. At that time, Mr. Eaton and Mr. Schrempp agreed that any business combination between Daimler–Benz and Chrysler would be an equal union of two powerful corporations, and not a take-over of one corporation by the other. (Tracinda Cmplt. at ¶ 18). Consistent with this agreement, Mr. Schrempp represented to Mr. Eaton that, in the event of a business combination between the two corporations, the following would occur (1) Chrysler's management would continue to run operations in the United States; (2) the management team at Daimler–Benz would jointly manage the combined entity with the Chrysler management team on a world-wide basis, and (3) appropriate internal structures would be implemented to create and maintain a management system consistent with "a merger of equals." Interested in Mr. Schrempp's proposal, Mr. Eaton met with other Chrysler executives and significant stockholders to discuss the proposed merger.

On February 20, 1998, Mr. Eaton again spoke with Tracinda's Mr. Kerkorian about Mr. Schrempp's proposal. In the conversation, Mr. Eaton explained to Mr. Kerkorian that Mr. Schrempp emphasized that the merger would be a "merger of equals" between the two corporations and that Chrysler would have an equal management role in the Company on a world-wide basis. (Tracinda Cmplt. at ¶ 18). Mr. Kerkorian and Mr. Eaton agreed that the proposal was interesting and could create significant business opportunities for Chrysler and its stockholders.

Between February and April 1998, Mr. Eaton, Mr. Schrempp, senior level executives from both companies and investment banking advisors met to refine plans for the proposed "merger of equals." (Amended Class Cmplt. at ¶¶ 28–36; Tracinda Cmplt. at ¶ 19; Glickenhaus Cmplt. at ¶¶ 19–21). During this time frame and with Mr. Schrempp's consent and knowledge, Mr. Eaton continually updated Tracinda's Mr. Kerkorian with the progress of the meetings, because Tracinda's approval of the transaction was necessary to accomplish the merger. Mr. Eaton repeatedly communicated to Mr. Kerkorian that during the negotiations, Mr. Schrempp continued to emphasize that the merger would be a merger of equals with a joint post-merger management structure that would reflect and ensure the contemplated "equality" between the two corporations. (Tracinda Cmplt. at ¶ 19).

During this same time frame, Chrysler hosted a meeting for securities analysts and investors to discuss Chrysler's performance. At one of these meetings, Mr. Eaton spoke with Glickenhaus's James Glickenhaus and told him that certain "unspecified changes" were going to be made at Chrysler. Later, at another meeting sponsored by Daimler–Benz, Mr. Glickenhaus met Mr. Schrempp and Mr. Gentz.

Mr. Schrempp and Mr. Gentz mentioned their interest in American corporations to Mr. Glickenhaus, and Mr. Glickenhaus suggested that Mr. Schrempp contact Mr. Eaton to discuss whether Chrysler would be interested in a business arrangement. Mr. Glickenhaus was unaware that the merger negotiations between the two companies were already underway. (Glickenhaus Cmplt. at ¶ 22).

In May 1998, Daimler–Benz and Chrysler held a joint meeting in New York. Glickenhaus and other large shareholders of Chrysler were represented at the meeting. During the meeting, both Mr. Eaton and Mr. Schrempp stressed that the proposed business combination was not a take-over, but a "merger of equals," and that the post-merger management structure would be consistent with a "merger of equals." (Glickenhaus Cmplt. at ¶¶ 21, 22, 24; Amended Class Cmplt. at ¶¶ 41–42). Consistent with the public announcements of the parties, several financial papers carried articles describing the merger as a merger of equals, and not as an acquisition of one company by the other. (Amended Class Cmplt. at ¶ 46).

Also in May 1998, Tracinda executed a Stockholder Agreement in reliance upon Daimler–Benz's continued representations that the contemplated business combination would be a "merger of equals." Under the terms of the Stockholder Agreement, Tracinda agreed to vote all of its Chrysler common stock in favor of the merger recommended by Chrysler's board of directors. (Tracinda Cmplt. at ¶ 21). On the same day as the execution of the Stockholder Agreement, Daimler–Benz, Chrysler and DaimlerChrysler AG, the entity created to be the surviving company, executed an Amended and Restated Business Combination Agreement (the "Amended Combination Agreement") to effectuate the transaction.

### C. *The Proxy/Prospectus*

Pursuant to the requirements of the Exchange Act, Defendants filed a registration statement with the Securities and Exchange Commission ("SEC") on August 6, 1998. (Tracinda Cmplt. at ¶¶ 22–27; Amended Class Cmplt. at ¶¶ 47–56; Glickenhaus Cmplt. at ¶¶ 26–30). The registration statement contained the Proxy/Prospectus which was being furnished to shareholders of Chrysler common stock related to the offering and issuance of no par value Ordinary Shares by Daimler-Chrysler as part of a series of transactions to achieve the "merger of equals" between Daimler–Benz and Chrysler. The cover letter to the Proxy Statement states, "Daimler/Chrysler AG will bring together two companies with equal financial strength under the joint leadership of both management groups." The Proxy/Prospectus also informed shareholders that Chrysler's board of directors had unanimously approved the merger and found it to be "fair to and in the best interests of Chrysler and Chrysler's stockholders." (Tracinda Cmplt. at ¶ 24; Amended Class Cmplt. at ¶ 53, Glickenhaus Cmplt. at ¶ 28). In discussing the contemplated transaction, the Proxy/Prospectus repeatedly referred to the merger as a "merger of equals." (Tracinda Cmplt. at ¶ 26 (citing Proxy/Prospectus at Preface, 11, 16, 47, 48, 51, 57, 65 & 93); Amended Class Cmplt. at ¶¶ 47–54; Glickenhaus Cmplt. at ¶¶ 29–30).

In addition to discussing the mechanics of the proposal, the Proxy/Prospectus stated that Credit Suisse First Boston Corporation ("Credit Suisse") was serving as financial advisor to Chrysler, and that Credit Suisse had determined after a review of similar transactions that the exchange ratio for the shares of Chrysler common stock was fair from a financial point of view to the holders of Chrysler common stock. (Proxy/Prospectus at 53,

14). In pertinent part, the Proxy/Prospectus stated:

> Precedent "Merger of Equals" Transactions. [Credit Suisse] analyzed the Transaction as a strategic business combination not involving a sale of control of Chrysler and accordingly, reviewed and analyzed the terms, to the extent publicly available, of 16 major announced or completed "merger of equals" transactions (the Precedent MOE transactions) in various industry sectors such as automotive, telecommunications, unities, financial services, consumer products and pharmaceuticals.

(Proxy/Prospectus at 57).

On September 18, 1998, the stockholders of Chrysler approved the merger. On November 17, 1998, the stockholders of Chrysler received shares of DaimlerChrysler stock in exchange for their shares of common stock in Chrysler. (Tracinda Cmplt. at ¶ 28; Glickenhaus Cmplt. at ¶ 31; Amended Class Cmplt. at ¶ 58).

### D. *Defendants' Alleged Post–Merger Conduct*

By their Complaints, Plaintiffs contend that Defendants made a series of changes to undercut the influence and autonomy of the Chrysler executives and constituents as part of Defendants' true intention to relegate Chrysler to a "division" of Daimler–Benz. Between September 1999 and November 2000, Plaintiffs contend that Defendants engaged in a contrived series of activities to fire and/or replace Chrysler executives who were likely to support Chrysler constituencies. Defendants' alleged actions culminated with the firing of several key Chrysler executives, including Chrysler's chief administrative officer, executive vice president of global sales and head of global communications, and the subsequent replacement of these individuals by longstanding Daimler–Benz execu-

tives. (Tracinda Cmplt. at ¶¶ 32, 33; Amended Class Cmplt. at ¶¶ 66–76; Glickenhaus Cmplt. at ¶¶ 33–36).

In addition to the management changes during this time period, Class Plaintiffs further contend that Defendants were concealing the Company's financial decline from investors. Class Plaintiffs highlight several articles originally touting Daimler-Chrysler sales, and the annual report for the fiscal year ending December 31, 1999, which projected "favorable economic conditions" for the Year 2000. Class Plaintiffs contend that these statements were materially misleading and that Defendants knew the financial outlook of the Company was not positive. Class Plaintiffs further contend that Defendants needed to mask the Company's deteriorating performance so they could complete their take-over of Chrysler. Class Plaintiffs contend that Defendants concealed the Company's true financial condition by urging dealers to step up their orders based on false promises of future incentive programs. According to Class Plaintiffs, these incentive programs never materialized and dealers were left with huge inventories which damaged their relationship with the Company. However, the influx of orders did create a short-term revenue boost that concealed the Company's financial troubles. Thus, Class Plaintiffs contend that Defendants "stuffed the company's distribution channels" with vehicles at the expense of future sales and profitability, such that the Company's later quarterly figures did not present an accurate picture of the Company's true economic position. (Amended Class Cmplt. at ¶¶ 79–105).

### E. *Mr. Schrempp's Public Statements*

By their Complaints, Plaintiffs further contend that Defendants' fraudulent intent to take-over Chrysler became clear in light of certain public statements made by Mr. Schrempp and published just days before the multiple firings of Chrysler executives. Specifically on October 30, 2000, the *London Financial Times*, a business news publication based in the United Kingdom, published an article detailing an interview of Mr. Schrempp (the "October 30th Article"). In pertinent part, the October 30th Article stated:

In a wide-ranging interview ahead of this week's two-day meeting [of the DaimlerChrysler Management Board], he [Mr. Schrempp] delivered a passionate deference of both the merger and his ambition to create a global car maker.

In doing so, however, he admitted that Chrysler had been relegated to a standalone division. Far from being a "merger of equals," as originally conceived, the deal has emerged as just one deal among several from the "executive war-room" of Daimler's Stuttgart headquarters.

Now that most of Chrysler's old management board has resigned or retired, Mr. Schrempp sees no reason to maintain the fiction. "Me being a chess player, I don't normally talk about the second or third move. The structure we have now with Chrysler (as a standalone division) was always the structure I wanted," he says. "We had to go a roundabout way but it had to be done for psychological reasons. If I had gone and said Chrysler would be a division, everybody on their side would have said: 'There is no way we'll do a deal.' "

But it's precisely what I wanted to do. From the start structure, we have moved to what we have today.

What DaimlerChrysler has today is a U.S. division where vehicle design, procurement, production and marketing are being overhauled. Mr. Schrempp maintains this was always the plan following the initial post-merger integration,

which generated about $1.4 bn (Pounds 970M) in savings.

(Tracinda Cmplt. at ¶ 34; Amended Class Cmplt. at ¶ 77; Glickenhaus Cmplt. at ¶ 37).

During this same time frame, Mr. Schrempp was interviewed for an article in *Barron's Magazine.* The article was published on November 4, 2000 and quotes Mr. Schrempp as stating: "We said in spirit it was a merger of equals, but in our minds we knew how we wanted to structure the company, and today I have it. I have Daimler, and I have divisions." (Tracinda Cmplt. at ¶ 36; Amended Class Cmplt. at ¶ 78; Glickenhaus Cmplt. at ¶ 40).

Plaintiffs contend that it was with the publication of these statements that they first learned that Daimler–Benz intentionally misrepresented the true nature of the transaction to secure the shareholders' votes for what was not a "merger of equals," but a take-over. (Tracinda Cmplt. at ¶ 35; Amended Class Cmplt. at ¶ 2; Glickenhaus Cmplt. at ¶ 39). Plaintiffs also contend that these statements demonstrate that Defendants' representations to Mr. Eaton and to shareholders through the Proxy/Prospectus were knowingly false and misleading and planned from the onset to mount a concealed take-over of Chrysler. As a direct and proximate result of Defendants' alleged misrepresentations and omissions, Plaintiffs contend that they were damaged financially.

## STANDARD OF REVIEW

### I. The Standard Under Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir. 1994). The Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost,* 1 F.3d at 183. Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The burden of demonstrating that the plaintiff has failed to state a claim upon which relief may be granted rests on the movant. *Young v. West Coast Industrial Relations Assoc., Inc.,* 763 F.Supp. 64, 67 (D.Del. 1991) (citations omitted).

As a general matter, a court may not consider matters outside the pleadings when adjudicating a motion to dismiss. However, a court may consider "document[s] integral to or explicitly relied upon in the complaint" without converting a motion to dismiss to a motion for summary judgment. *In re Rockefeller Center Properties, Inc. Securities Litigation,* 184 F.3d 280, 287 (3d Cir.1999). Specifically, in a securities action, a court may consider SEC filings for the purpose of determining what statements the documents actually contain. *Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir.2000) (finding persuasive the reasoning of the Second Circuit in *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991)). However, the documents

may not be considered to establish the truth of the matters asserted in them. *Id.*

## II. Standards Under Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). The requirements of Rule 9(b) apply to securities fraud claims. *See e.g. Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287–288 (3d Cir.1992) (applying Rule 9(b) to Section 11 and 12 claims resounding in fraud); *Charal Inv. Co. v. Rockefeller*, 131 F.Supp.2d 593, 602–603 (D.Del.2001) (applying Rule 9(b) to Section 14(a) claims resounding in fraud).

The purpose of Rule 9(b) is to give the defendants notice of the precise misconduct with which they are charged and prevent false charges. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). Although allegations of "date, place or time" may satisfy the requirements of Rule 9(b), nothing in Rule 9(b) requires them. *Id.* Rather, the plaintiff may use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* Thus, the requirement of particularity does not require " 'an exhaustive cataloging of facts but only sufficient factual specificity to provide assurance that plaintiff has investigated ... the alleged fraud and reasonably believes that a wrong has occurred.' " *In re ML–Lee*, 848 F.Supp. 527, 555 (D.Del.1994) (citations omitted).

## III. Elements of Plaintiffs' Securities Claims

### A. *Claims Under Section 10(b) and Rule 10b–5 of the Exchange Act*

Section 10(b) of the Exchange Act prohibits the use "in connection with the purchase or sale of any security [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b). Rule 10b–5 was promulgated in connection with Section 10(b) and "provides the framework for a private cause of action for violations involving false statements or omissions of material fact." *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 315 (3d Cir.1997).

Section 10(b) claims are quite similar to common law fraud claims. To state a Section 10(b) claim, a plaintiff must allege that the defendant made (1) a misstatement or omission; (2) of a material fact, (3) with scienter; (4) in connection with the purchase or sale of a security; (5) upon which the plaintiff reasonably relied; and (6) that reliance was the proximate cause of plaintiff's injury. *In re Reliance Sec. Litig.*, 91 F.Supp.2d 706, 720 (D.Del.2000) (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir.1996)).

### B. *Claims Under Sections 11 and 12(a)(2) of the Securities Act*

Under Sections 11 and 12(a)(2) of the Securities Act, liability attaches to specified individuals when the registration statement or prospectus contains "an untrue statement of a material fact" or "omit[s] ... a material fact required to be stated therein or necessary to make the statement therein not misleading ..." 15 U.S.C. § 77k (registration statement), 15 U.S.C. § 77l(a)(2) (prospectus or oral communication). A plaintiff alleging a Section 11 and 12(a)(2) claim need not plead fraud,

reasonable reliance or scienter. *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 645 n. 28 (3d Cir.1989) (recognizing that defendants may be held liable for negligent representations or omissions under Section 12 of the Securities Act).

### C. *Claims Under Section 14(a) and Rule 14a–9 of the Exchange Act*

■ Rule 14a–9 prohibits the solicitation of a shareholder's vote by means of a proxy statement that "is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . ." 17 C.F.R. § 240.14a–9. To establish a cause of action for a violation of Section 14(a) and Rule 14a–9, a plaintiff must allege "(1) that the defendant made a material misrepresentation or omission in a proxy statement; (2) with the requisite state of mind; and (3) that the proxy solicitation was an essential link in effecting the proposed corporate action." *Reliance*, 91 F.Supp.2d at 728 (citing *Halpern v. Armstrong*, 491 F.Supp. 365, 378 (S.D.N.Y.1980)).

### D. *Controlling Persons Claims Under Section 20 of the Exchange Act and Section 15 of the Securities Act*

■ The elements of controlling persons claims under Section 20 of the Exchange Act and Section 15 of the Securities Act are identical. *See In re MobileMedia Sec. Litig.*, 28 F.Supp.2d 901, 940 (D.N.J.1998). To state a claim for control person liability, the plaintiff must allege (1) a primary violation of the federal securities laws by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some

meaningful way a culpable participant in the primary violation. *Reliance*, 91 F.Supp.2d at 731 (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir.1998)).

### DISCUSSION

### I. Whether Plaintiffs' Federal Securities Laws Claim Are Barred By The Statute Of Limitations

By their Motion, Defendants contend that Plaintiffs' federal securities laws claims are barred by the statute of limitations. The parties agree that the applicable statute of limitations is the one-year/three-year limitations period prescribed by the Supreme Court in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Specifically, claims brought under the securities laws must be commenced within one year of the discovery of the facts constituting the violation *and*, in all events, within three years of the actual violation. *Id.*

■ The crux of the parties' dispute centers on the one-year prong of this limitations period. The parties disagree as to whether the *Lampf* rule requires actual notice or inquiry notice of the alleged wrong to trigger the running of the limitations period.[4] With regard to Plaintiffs' claims under Section 11 and 12 of the Securities Act, Plaintiffs apparently concede that the appropriate standard is inquiry notice. (D.I. 106 at 6–10). Accordingly, the narrow issue raised by the parties is whether the inquiry notice standard applies to Plaintiffs' claims under Sections 10 and 14 of the Exchange Act, or whether the appropriate standard is actual notice.[5]

---

4. It is apparently undisputed that if the actual notice standard applies to Plaintiffs' claims, Plaintiffs would be well within the limitations period.

5. Although the parties do not specifically discuss Plaintiffs' controlling persons claims in the context of their statute of limitations arguments, the Court observes that its discussion

■ Although the Court of Appeals for the Third Circuit has not yet opined on this issue directly, several district courts in this Circuit have concluded that inquiry notice is the appropriate standard to apply to claims under Section 10 and 14 of the Exchange Act. *In re The Prudential Insurance Company of America Sales Practice Litigation,* 975 F.Supp. 584, 599 (D.N.J.1996) (collecting cases from the Second, Fourth, Fifth and Seventh Circuits applying the inquiry notice standard to Exchange Act claims). In the absence of a decision from the Third Circuit and given the obvious policy considerations and benefits of maintaining consistency with regard to the treatment of federal securities claims, the Court will join the courts that have considered this issue. *Id.* (citing *In re Data Access Sys. Secs. Lit.,* 843 F.2d 1537, 1549 (3d Cir.1988) for the proposition that uniform remedies in federal securities cases demands uniform application of the limitations periods in such cases). Accordingly, the Court concludes that the inquiry notice standard is the appropriate standard to apply to trigger the one-year limitations period under *Lampf* for claims under Sections 10 and 14 of the Exchange Act. Having concluded that the inquiry notice standard is the appropriate standard for all of Plaintiffs' federal securities laws claims, the Court will next consider whether Plaintiffs had inquiry notice of their alleged claims more than one year prior to the filing of their Complaints.

A plaintiff is on inquiry notice when "a person of ordinary intelligence would have suspected that he or she was being defrauded." *In re Equimed, Inc. Securities Litigation,* 2000 WL 562909, *9 (E.D.Pa. May 9, 2000). Stated another way, a plaintiff need not be made aware of the entire alleged fraudulent scheme to be on inquiry notice. *See e.g. Brumbaugh v. Princeton Partners,* 985 F.2d 157, 162 (4th Cir.1993). Rather, a plaintiff is on inquiry notice when he or she has "sufficient information of possible wrongdoing" or " 'storm warnings' of culpable activity." *In re Equimed, Inc.,* 2000 WL 562909 at *9; *Brumbaugh,* 985 F.2d at 162. Once a plaintiff is on inquiry notice, due diligence requires the plaintiff to conduct reasonable investigations into the possibility of wrongdoing. *Brumbaugh,* 985 F.2d at 162.

■ By their Motion, Defendants contend that Plaintiffs had inquiry notice of their claims as early as May 1998, but in no event later than September 1999, well more than a year before the filing of the Tracinda and Glickenhaus Complaints in November 2000 and the Amended Class Complaint in January 2001. In support of their position, Defendants rely on several articles published in May 1998 in the financial press in which certain analysts considered the provisions of the Combination Agreement and concluded that the "merger of equals" announced by Daimler–Benz and Chrysler was actually a sale of Chrysler and/or that Daimler–Benz would be the dominant partner in the transaction. In addition, Defendants suggest that the parting of several key Chrysler executives could have alerted Plaintiffs to any alleged claims of securities fraud.

On a motion to dismiss, the defendant bears a heavy burden to show that the

---

on the limitations period applies with equal force to Plaintiffs' controlling person claims under Section 15 of the Securities Act and Section 20 of the Exchange Act. Specifically, courts in this district have recognized that because controlling person claims are predicated upon another person's violation of dif-ferent provisions of the securities laws, the statute of limitations period governing these claims is the same as the limitations period governing the claims against the "controlled person." *Hill v. Equitable Trust Company,* 562 F.Supp. 1324, 1340 (D.Del.1983).

plaintiff had inquiry notice more than one year prior to the filing of his or her complaint. *In re Equimed,* 2000 WL 562909 at 9. Unless the complaint, on its face, fails to comply with the applicable limitations period, a motion to dismiss based on the failure to comply with the statute of limitations should be denied. *Id.* Further, the question of whether a plaintiff had inquiry notice such that his or her complaint is barred by the statute of limitations is a fact-intensive question making it inappropriate for resolution on a motion to dismiss, unless the underlying facts are undisputed. *Brumbaugh,* 985 F.2d at 162 (affirming district court's grant of motion to dismiss based on failure to comply with the statute of limitations where underlying facts were not in question); *see also Olcott v. Delaware Flood Co.,* 76 F.3d 1538, 1549 (10th Cir.1996) (holding that resolution of notice issue "in the procedural context of a motion to dismiss is wrong"); *In re Equimed,* 2000 WL 562909 at 9 (denying motion to dismiss based on limitations period because of outstanding factual issues).

In this case, the financial articles that appeared in the financial press and relied upon by Defendants to establish inquiry notice are not within the four corners of the Complaints, and thus, they are not appropriately considered by the Court on a motion to dismiss. *In re Burlington Coat Factory,* 114 F.3d at 1426. Moreover, if the articles were to be considered at this juncture, the Court is persuaded that they raise potential factual issues regarding notice and due diligence which would preclude the Court from resolving the issue at this stage.[6] As for Defendants' remaining

allegations concerning the contents of the Combination Agreement and the movement of Chrysler management, the Court observes that Plaintiffs have pled that Defendants acted in a surreptitious manner to replace Chrysler executives and breach the Combination Agreements so as to mask their true intentions and avoid alerting shareholders to their alleged fraud. Accordingly, the Court cannot conclude that the Complaints fail to comply facially with the limitations period, and therefore, the Court will deny Defendants' Motion To Dismiss based on the statute of limitations bar asserted by Defendants.

## II. Whether Plaintiffs Have Alleged An Actionable Misstatement Or Omission

Each of Plaintiffs' securities claims requires the existence of a material misstatement or omission as an essential element. A misrepresentation or omission is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act]." *Basic Inc. v. Levinson,* 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The significance of a misrepresentation or omission is discerned by examining the total mix of information available to a reasonable investor. Thus, a misrepresentation or omission may also be materially misleading if a reasonable investor would view it as "significantly altering the total mix of information available." *Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 281, n. 11 (3d Cir.1992). Further, statements which are literally true may become misleading to investors depending upon their

---

**6.** The Court's observation concerning the potential factual issues raised by these articles is not a comment on the possible success or failure of a motion for summary judgment on this issues. Indeed, it may subsequently be shown that there is no genuine and material factual dispute. However, at this stage, the Court must accept Plaintiffs' allegations as true, and there is no suggestion in the Complaints that Plaintiffs were aware of these articles or that the Plaintiffs were otherwise on inquiry notice of Defendants' alleged fraudulent conduct.

context. *In re Cell Pathways, Inc.*, 2000 WL 805221, *9 n. 7 (E.D.Pa.2000) (citing *McMahan v. Wherehouse Entertainment, Inc.*, 900 F.2d 576, 579 (2d Cir.1990)).

Whether a misrepresentation is material is a mixed question of law and fact, ordinarily reserved for the trier of fact. *Shapiro*, 964 F.2d at 281 n. 11, *see also Mendell v. Greenberg*, 927 F.2d 667, 673 (2d Cir.), amended on other grounds, 938 F.2d 1528 (2d Cir.1990) ("Because materiality is a mixed question of law and fact, it is a question especially well suited for jury determination ..."). "Only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of law." *Id.* Thus, to prevail on a motion to dismiss, the defendant must show that "under no set of facts will the plaintiff[] be able to establish that the alleged misrepresentations and omissions were material." *In re ValueVision Int'l Inc. Securities Litigation*, 896 F.Supp. 434, 442 (E.D.Pa.1995).

The misrepresentations that Plaintiffs in the case at bar principally rely upon in support of their claims are Defendants' representations both orally and in the Proxy/Prospectus that the transaction between Daimler–Benz and Chrysler was to be a "merger of equals." By their Motion To Dismiss, Defendants contend that these alleged misrepresentations are not actionable, because (1) the term "merger of equals" was defined in the corporate governance provisions of the Combination Agreement and Plaintiffs have not alleged a breach of the Combination Agreement; (2) the failure of Defendants to disclose their alleged motive to pursue control of Chrysler is not actionable; and (3) the merger was a "merger of equals" because that term has no legally cognizable generic

definition, it implies no particular corporate governance structure, and the management changes did not alter the merger's character as a merger of equals. The Court will review each of Defendants' arguments in turn.

A. *Defendants' Argument That The Term "Merger Of Equals" Was Defined In The Corporate Governance Provisions Of The Combination Agreement And Plaintiffs Have Not Alleged A Breach Of The Combination Agreement*

■ According to Defendants, Plaintiffs have not alleged that the terms of the Combination Agreement were not fully disclosed in the Proxy/Prospectus or that the terms of the Combination Agreement were breached. Thus, Defendants contend that Plaintiffs have not identified an actionable misstatement or omission.

After reviewing the allegations of the Complaints and the relevant documents referenced therein, the Court concludes that Plaintiffs have alleged actionable misstatements to support their federal securities laws claims. Plaintiffs allege that both orally and in the Proxy/Prospectus, Defendants represented that the transaction would be a "merger of equals," a combined company of "equal halves" with "joint leadership," and not a "sale of control" or take-over of one company by the other. (See e.g. Proxy/Prospectus at 16–17, 47, 57; Tracinda Cmplt. at ¶¶ 18, 19 26, 27; Glickenhaus Cmplt. at ¶¶ 19, 24, 29; Amended Class Cmplt. at ¶¶ 44, 46). Plaintiffs allege that these statements were false based in large part on the statements of Mr. Schrempp to the financial press in October and November 2000. In these statements, alleged in the Complaints, Mr. Schrempp indicates that he never intended the merger to be a merger of equals, because he always intended

Chrysler to be a division of the Daimler organization. Mr. Schrempp allegedly further stated that if the truth were known, the merger would not have been approved by the Chrysler shareholders. Accepting as true Plaintiffs' allegations as the Court must on a motion to dismiss, the Court concludes that Plaintiffs have adequately alleged that Defendants' representations that the merger would be a merger of equals were false and misleading.

Defendants contend that because the term "merger of equals" was defined in the corporate governance provisions of the Combination Agreement and Plaintiffs do not allege a breach of the Combination Agreement, Plaintiffs cannot allege that the representations in the Proxy/Prospectus were false. The Court finds this argument unpersuasive for several reasons. First, as Plaintiffs allege in their Complaint, Mr. Schrempp's public statements suggest that the corporate governance structure described in the Proxy/Prospectus was part of Defendants' scheme to acquire Chrysler in a "roundabout way." Plaintiffs allege that Mr. Schrempp orally represented that the "existing Chrysler management would team up with [the] existing Daimler–Benz management to run the combined new company equally on a worldwide basis." (Complt.18, 19). However, Plaintiffs also allege that these statements were actually false when viewed in light of Mr. Schrempp's subsequent statements in October and November 2000 and in light of the actual changes in management of the new Company.

Second, the Proxy/Prospectus does not define the term "merger of equals" solely in relation to the Combination Agreement.[7] Indeed, Defendants' contention that the term "merger of equals" is defined only with reference to the Combination Agreement is belied by the argument in their Opening Brief that the Proxy/Prospectus uses the term "merger of equals" to signify at least four different concepts. According to Defendants,

> The Proxy/Prospectus employs the term "merger of equals" (i) to broadly describe a business combination between companies of roughly equal financial strength, under joint leadership with post-deal equity split about evenly; (ii) as a short-hand for the specific post-Merger governance structure of DaimlerChrysler; (iii) as a short-hand for the post-Merger governance structure, incorporating a brief description of the Chrysler Boards' view of its role and that of Chrysler's senior management in helping to realize the goals of the Merger; and (iv) to describe a category of comparable transactions used by [Credit Suisse] in its analysis of the fairness of the deal price to Chrysler shareholders.

(D.I. at 58 at 22). That Plaintiffs' allegations are sufficient to establish a material misrepresentation is perhaps most apparent with reference to the fourth use of the term "merger of equals" by the financial analysts in evaluating the fairness of the transaction. As indicated in the Proxy/Prospectus, Chrysler's financial adviser "analyzed the Transactions as a *strategic business combination not involving a*

---

7. Defendants also rely on this argument specifically with regard to the alleged oral misrepresentations made to representatives of Tracinda. Defendants contend that Tracinda knew the term "merger of equals" would be defined later in the Combination Agreement, and thus, Tracinda cannot allege that statements made before the execution of the Com-

bination Agreement were false. The Court disagrees with Defendants, because as stated above, Tracinda has alleged that the reference to a "merger of equals" was meant to conceal the true nature of the transaction and the term "merger of equals" had meaning beyond the confines of the Combination Agreement.

*sale of control of Chrysler* and, accordingly reviewed and analyzed the terms, to the extent publicly available, of 16 major announced or completed 'merger of equals' transactions (the 'Precedent MOE Transactions') in various industry sectors ..." (Proxy/Prospectus at 57). In the Court's view, these allegations, coupled with the allegations concerning Mr. Schrempp's statements are sufficient to establish the material false and/or misleading statements necessary to state Plaintiffs' claims under the federal securities laws.

Further, the Court concludes that Defendants' argument that Plaintiffs' claims fail because they did not allege a breach of the Combination Agreement is contradicted by the Supreme Court's recent pronouncement in *The Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 121 S.Ct. 1776, 1780–1782, 149 L.Ed.2d 845 (2001). In *The Wharf*, United International Holdings Inc. ("United") agreed to provide services in connection with a cable television license to The Wharf in exchange for an option to buy 10% of the stock of a new cable system. By its complaint, United alleged that The Wharf secretly intended not to permit United to exercise the option, and United brought suit against The Wharf under Section 10(b) of the Exchange Act. Although The Wharf agreed that the option was a "security" for the purposes of the Exchange Act, The Wharf argued that its conduct fell outside of the scope of Rule 10b–5 because, among other things, the plaintiffs' federal securities claims were "in reality no more than ordinary state breach-of-contract claims—actions that lie outside the Act's basic objectives." *Id.* at 1782. Rejecting The Wharf's position, the United States Supreme Court stated:

> United's claim, however, is not simply that the Wharf failed to carry out a promise to sell its securities. It is a claim that the Wharf sold it a security (the option) *while secretly intending from the beginning not to honor the option.*

*Id.* (emphasis added).

Defendants contend that *The Wharf* is not applicable, because "plaintiffs do not and cannot allege that the DaimlerChrysler Defendants made any promise that they did not fully perform in accordance with its terms." (D.I. 45 at 9). However, Plaintiffs' allegations are precisely what Defendants contend they are not. Plaintiffs allege that Defendants represented that the transaction would be a merger of equals, yet Defendants never intended to comply with that concept and ultimately did not comply with that concept. Moreover, contrary to Defendants' arguments, Plaintiffs do allege several instances in which they contend that Defendants did not comply with the corporate governance provisions of the Combination Agreement and failed to fulfill other promises in the Proxy/Prospectus including the promise that the transaction would be a "merger of equals." (See e.g. Amended Class Cmplt. ¶¶ 67, 76, 111; Glickenhaus Cmplt. ¶¶ 29, 31–16). That Plaintiffs did not bring the failure to honor these promises as a breach of contract claim is not fatal to their claims, because as Defendants recognize in their own discussion of *The Wharf*, "the making of a promise with no intent to fulfill that promise, coupled with a later refusal actually to fulfill the promise, constitutes a misstatement." (D.I. 45 at 9). A material misstatement or omission is all that is required to satisfy the first essential element of Plaintiffs' securities claims. Accordingly, the Court concludes that Plaintiffs have alleged actionable misstatements in support of their securities claims.

In addition to their previous arguments, the parties direct the Court to *In re BankAmerica Corp. Securities Litigation*, 78

F.Supp.2d 976 (E.D.Mo.1999) to support their respective positions. Defendants contend that this case is the antithesis of *BankAmerica*, because unlike *BankAmerica*, the term "merger of equals" was defined in this case "as the amalgamation of various constituencies along with the institution of a specific set of governance arrangements which carefully delineated participation by both Chrysler and Daimler–Benz as specified in the Combination Agreement, and plaintiffs do not allege that those provisions have not been honored." (D.I. 58 at 41 n. 18). In contrast, Plaintiffs contend that *BankAmerica* is consistent with this case and thus, mandates the denial of Defendants' motion to dismiss.

As in this case, the dispute in *BankAmerica* centered on a business combination that was described as a "merger of equals." The joint proxy/prospectus described the contemplated merger between Nations Bank Corp. ("NB") and old BankAmerica ("OBA") as a "merger of equals" in which no acquisition premium would be paid to either party and in which there would be shared control of the combined entity by the stockholders of both banks. *Id.* at 982–983. Like this case, the proxy materials also described the representation that each bank constituent would have on the board and provided that Hugh McColl, the then chairman of NB, would be chairman and CEO of the new BankAmerica ("NBA"), and David Coulter, the then CEO of OBA, would become president of NBA.

However, after the merger closed, Coulter resigned from NBA, and "further appointments of members of the former NB camp to high-ranking positions within NBA caused the press to state that the former NB was firmly in control of a bank originally billed as a merger of equals." *Id.* at 985. Three days after Coulter's resignation, an unidentified director of NBA declared that the merger was never intended to be a merger of equals and many associated with OBA began to view the merger as a take-over rather than a true merger of equals. Declining to dismiss the plaintiffs' claims under Section 11 and 12(a)(2) of the Securities Act, the court stated:

> The . . . plaintiffs allege that NBA, the Insider Defendants and the Registration Defendants violated Sections 11 and 12(a)(2) . . . by falsely characterizing the merger as a merger of equals in the Registration Statement and the Prospectus when defendants had no intention for control of NBA to be shared or for Coutler to succeed McColl as Chairman and CEO of NBA . . . Defendants object that the term merger of equals is too vague to be actionable and that the proxy fully disclosed the post-merger control arrangements. Further, defendants never guaranteed that Coulter would succeed McColl . . .

> . . . However, the Proxy/Prospectus and the Registration Statement essentially define "merger of equals" as shared control of the corporation such that no change of control premium would be paid to either sides' shareholders. *Plaintiffs are alleging that, contrary to defendants' representations, that defendants never intended for the merger to be a merger of equals such that control over the combined entity was shared. Further, they allege that Coulster's ouster was predetermined by McColl even before the merger was completed... These allegations, if true, are material because there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the investor as having significantly altered the total mix of information made available." [citations omitted] That is, if the BA Holders had known that defen-*

*dants never intended for control to be shared and for Coulter to succeed McColl, they would likely not have voted for the merger without the addition of a control premium.*

*Id.* at 999–1000 (emphasis added).

After reviewing the *BankAmerica* decision, the Court is not persuaded by Defendants' attempts to distinguish it. Indeed, in the Court's view, the allegations in *BankAmerica* are remarkably similar to the allegations raised by Plaintiffs in this case. Plaintiffs here are alleging that Defendants never intended the transaction between Daimler–Benz and Chrysler to be a merger of equals, even though they represented the transaction as such. Plaintiffs assert several factual allegations in support of their contention including Mr. Schrempp's statements to the financial press and the shift in corporate governance toward the Daimler constituency. If true, Plaintiffs' assertions, like the allegations in *BankAmerica,* are sufficient to establish the material misrepresentations needed to sustain their securities fraud claims. Accordingly, the Court concludes that Plaintiffs have alleged actionable misstatements to support their securities claims, and therefore, the Court declines to dismiss Plaintiffs' Complaints at this juncture.

**B.** *Defendants' Argument That The Failure Of Defendants To Disclose Their Alleged Motive To Pursue Control Of Chrysler Is Not Actionable*

■ Defendants next contend that the failure of Defendants to disclose their alleged motive to pursue control of Chrysler is not actionable. In support of their argument, Defendants direct the Court to a variety of cases holding that the failure to disclose one's "true motives" or one's "impure motives," standing alone, is insufficient to form the basis of a securities claim.

The difficulty with Defendants' argument is that its premise rests on the assumption that the operative facts surrounding the transaction had been fully and accurately disclosed in the Proxy/Prospectus and that the Proxy/Prospectus was not false or misleading. Indeed each of the cases upon which Defendants rely for their undisclosed motive argument involve the absence of any allegations by the plaintiffs that the disclosures that were made were either false or misleading.[8] *See Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1096, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) ("[T]o recognize liability on mere disbelief or undisclosed motive *without any demonstration that the proxy statement was false or misleading about its subject would authorize [securities fraud claims] confined solely to what one skeptical court spoke of as the 'impurities' of a director's 'unclean heart'* ... *This we think would cross the line* that *Blue Chip Stamps [v. Manor Drug Stores* ], 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) ] sought to draw.") (emphasis added); *Lewis v. Chrysler Corp.,* 949 F.2d 644, 651 (3d Cir.1991) (recognizing that "[t]he unclean heart of a director is not actionable, whether or not it is 'disclosed,' unless the impurities are translated into actionable deeds or omissions both objective and external");

---

8. *See also Kademian v. Ladish Co.,* 792 F.2d 614, 624 (7th Cir.1986) (holding that failure to disclose "true reasons" for merger was not misleading where there was no allegation that factual matter disclosed was false); *Rodman v. The Grant Foundation,* 608 F.2d 64, 71 (2d Cir.1979) (holding that disclosure of "selfish motive" not required under securities laws where disclosure of transaction was complete and accurate); *Shamrock Holdings, Inc. v. Polaroid Corp.,* 709 F.Supp. 1311, 1324–1326 (D.Del.1989) (same).

*Biesenbach v. Guenther,* 588 F.2d 400 (3d Cir.1978) (same).

Unlike the cases cited by Defendants, Plaintiffs have alleged that Defendants made affirmative false statements and that the terms of the transaction were not fully and accurately disclosed by Defendants. Thus, Plaintiffs' claims do not rest alone on the alleged failure of Defendants to reveal their alleged motive of achieving a take-over of Chrysler. Because Plaintiffs have alleged affirmative misrepresentations that extend beyond the failure to disclose the motive underlying the transaction between Daimler–Benz and Chrysler, the Court will deny Defendants' Motion To Dismiss.

C. *Defendants' Argument That The Merger Was A "Merger Of Equals" Because That Term Has No Legally Cognizable Generic Definition And The Management Changes Did Not Alter The Merger's Character As A Merger Of Equals*

Defendants next contend that Plaintiffs have failed to allege actionable misstatements because the merger was a "merger of equals." Specifically, Defendants contend that the term "merger of equals" has no generic or other legally recognized meaning, and that its only meaning is ascertained through the corporate governance provisions of the Combination Agreement. In addition, Defendants contend that the departure of certain Chrysler executives did not alter the characteristic of the merger as a "merger of equals," because the Combination Agreement did not promise permanent job security to these Chrysler executives.

In response, Plaintiffs contend that Defendants' argument is a backhanded way of saying that the term "merger of equals" is not material. Plaintiffs maintain that the determination of materiality is a question of fact not suitable for resolution in

the context of a motion to dismiss. Plaintiffs further contend that Mr. Schrempp acknowledged that his statements were material when he recognized that Chrysler would not have consummated the transaction if he announced that Chrysler would be a division of Daimler–Benz. (D.I. 56 at 25).

If Defendants' argument is related to the question of materiality as Plaintiffs suggest, then the Court agrees with Plaintiffs that in these circumstances the question of materiality is best left to a later stage of the proceedings. Indeed, accepting the truth of Plaintiffs' allegations concerning Mr. Schrempp's statements, the Court cannot conclude that Plaintiffs have failed to allege materiality.

Further, in the Court's view, Defendants' argument is quite similar to its previously advanced argument that the term "merger of equals" is defined solely by reference to the Combination Agreement and Plaintiffs have not alleged a breach of the Combination Agreement. For the reasons discussed previously, the Court does not accept Defendants' position. At this juncture, the Court is required to accept Plaintiffs' allegations as true, and taking those allegations in total, the Court cannot conclude that Plaintiffs have failed to state an actionable material misrepresentation. Of course, the Court's conclusion in this regard is limited to the context of a motion to dismiss, and therefore, the Court expresses no opinion as to whether Plaintiffs' allegations can withstand a motion for summary judgment in the face of these same arguments. Accordingly, the Court will deny Defendants' Motion To Dismiss.

**III. Whether Plaintiffs Have Alleged Justifiable Reliance On Any Alleged Misstatement**

By their Motion, Defendants contend that Plaintiffs have failed to plead

justifiable reliance on any alleged misstatements. Defendants contend that Plaintiffs Tracinda and Glickenhaus could not have reasonably relied on the alleged oral representations of Mr. Schrempp, because the details of the control of the combined company were left to later negotiation and were ultimately superseded by the Combination Agreement and the Proxy/Prospectus. With regard to Tracinda in particular, Defendants contend that Tracinda affirmatively disavowed any reliance on Defendants' oral statements when it signed the Stockholder Agreement which contained an integration clause.

The question of whether Plaintiffs have adequately alleged justifiable reliance is relevant only to Plaintiffs' claims under Sections 10 and 14 of the Exchange Act. A plaintiff need not plead reliance to state a claim under Sections 11 and 12(a)(2) of the Securities Act. *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 10 (3d Cir.1993); *In re MobileMedia Sec. Litig.*, 28 F.Supp.2d 901, 923 (D.N.J.1998).

As a general matter, an investor may not justifiably rely on a misrepresentation if the investor should have uncovered the truth through due diligence. To this effect, "the plaintiff [must] act reasonably" and "a sophisticated investor is not barred by reliance upon the honesty of those with whom he deals in the absence of knowledge that the trust is misplaced." *AES Corp. v. Dow Chemical Co.*, 157 F.Supp.2d 346, 351 (D.Del.2001) (quoting *Straub v. Vaisman & Co.*, 540 F.2d 591, 598 (3d Cir.1976) in the context of a Section 10 and Rule 10b–5 violation). Stated another way, "an investor cannot close his eyes to a known risk," and if he is "cognizant of the risk then there is no liability." *Id.* (quoting *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530 (7th Cir.1985)), *see also Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1516–1517 (10th Cir.1983).

In determining whether reliance is justifiable, courts consider several factors, including but not limited to: (1) the existence of a fiduciary relationship; (2) the plaintiff's opportunity to detect the fraud; (3) the sophistication of the plaintiff; (4) the existence of a longstanding business or personal relationship; and (5) access to the relevant information. *Id.* (citing *Straub*, 540 F.2d at 598); *see also Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032 (2d Cir.1993). The burden of establishing that reliance was unreasonable rests on the defendant. *AES Corp.*, 157 F.Supp.2d at 351.

After reviewing the allegations of Plaintiffs' Complaints, the Court concludes that for purposes of adjudicating Defendants' Motion To Dismiss, Plaintiffs have alleged justifiable reliance. Defendants suggest that it is unreasonable as a matter of law for Plaintiffs to rely on "prior vague oral statements," where as here, written documents detailing the transaction were provided to Plaintiffs. However, the cases upon which Defendants rely for this proposition are not procedurally akin to this case in that they are either summary judgment cases or judgment on the verdict cases.[9] *See e.g. Brown*, 991 F.2d at 1020 (summary judgment); *Zobrist*, 708 F.2d at 1511 (judgment on the verdict).

Indeed, on a motion to dismiss, the Court must accept Plaintiffs' allegations as true and construe the Complaints in the light most favorable to Plaintiffs. Thus,

---

9. Defendants direct the Court to several cases for the proposition that the Court can appropriately adjudicate the question of reasonable reliance on a motion to dismiss. (D.I. 45 at 27). While the Court does not disagree with Defendants' assertion in theory, in the circumstances of this case, the Court does not believe Plaintiffs have failed to allege reasonable reliance such that their Complaints should be dismissed at this juncture.

the Court cannot conclude at this juncture that Plaintiffs' allegations related to the prior oral statements by Defendants about the merger being a merger of equals are so vague as to be usurped as a matter of law by the written materials provided to Plaintiffs. *Klein v. Boyd*, 1996 WL 230012 (E.D.Pa. May 3, 1996) (holding that even if the court agreed with the proposition from other jurisdictions that written documents necessarily trump any inconsistent oral misrepresentations, the court could not decide the issue on a motion to dismiss). Further, the Court cannot conclude at this juncture that the written materials expressly contradict the oral misrepresentations allegedly made to Plaintiffs such that the written documents would be sufficient to preclude Plaintiffs from alleging reliance. *Id.,see also Zobrist*, 708 F.2d at 1518 (holding that reliance on oral statement was unjustified where written documents expressly contradicted oral statement); *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1325 (7th Cir.1988) (same).

■ With respect to Tracinda, Defendants allege that Tracinda is precluded as a matter of law from alleging justifiable reliance based on the integration clause in the Stockholder Agreement. In pertinent part, the Stockholder Agreement that Tracinda signed states:

> This Agreement, the Standstill Agreement, and the other agreements executed and delivered by any of the parties hereto and the Stockholder [Tracinda and Kerkorian] in connection herewith constitute the entire subject matter hereof and supersede all other prior agreements and understandings, both written and oral, between the Stockholder and such other parties with respect to the subject matter hereof.

(D.I. 58 at 47) (citing Ex. C at Ex. § 4.3) (emphasis omitted).

Consistent with several other courts, this Court has recognized that an enforceable integration clause may, in certain circumstances, be sufficient to preclude justifiable reliance as a matter of law. *AES Corp.*, 157 F.Supp.2d 346, 351 (D.Del.2001) (collecting cases). However, construing the Complaint and the reasonable inferences therefrom in the light most favorable to Tracinda, it appears that Tracinda contends as part of its securities fraud claim that it was fraudulently induced to enter into the Stockholder Agreement.[10] Specifically, Tracinda alleges that it would not have executed the Stockholder Agreement if it were not for Defendants' false representations that the merger was going to be a merger of equals. (D.I. 1 at 21). Accepting Plaintiffs' allegations as true as the Court must on a motion to dismiss, the Court cannot conclude at this stage of the proceedings that Tracinda is precluded as a matter of law from alleging reliance based upon the integration clause. Indeed, this Court in *AES Corp.* did not make its decision concerning the issues of reliance and the enforceability of an integration clause on a motion to dismiss, but

---

10. Tracinda directs the Court to its decision in *Toner v. Allstate Ins. Co.*, 829 F.Supp. 695, 698 (D.Del.1993), to support its fraud in the inducement argument. As Defendants point out, however, *Toner* did not address an integration clause. But, the *Toner* decision did recognize that one who has been fraudulently induced to enter a contract is entitled to recission of that agreement. The question of fraudulent inducement implicates the parol evidence rule. At this juncture, the parties have not thoroughly briefed the fraud in the inducement issue, and therefore, the Court declines to address it in detail, other than to note that accepting Plaintiffs' allegation of fraud in the inducement as true, Plaintiffs have alleged reliance such that their claim is not precluded at this stage by the integration clause.

rather considered these issues in the context of a motion for summary judgment. *AES Corp.*, 157 F.Supp.2d at 351–354; *Rissman v. Rissman*, 213 F.3d 381 (7th Cir.2000) (concluding that integration clause barred claim of justifiable reliance on appeal from grant of summary judgment); *Jackvony v. RIHT Fin. Corp.*, 873 F.2d 411 (1st Cir.1989) (concluding that integration clause barred claim of justifiable reliance on appeal from directed verdict). Accordingly, the Court will reserve judgment on this issue until a later stage in the proceedings and deny Defendants' Motion To Dismiss Plaintiffs' claims under the Exchange Act for failure to allege justifiable reliance.

## IV. Whether Plaintiffs Have Adequately Alleged Loss Causation Or Damages

 Defendants next contend that Plaintiffs have failed to adequately allege loss causation or damages. However, in making their argument, Defendants acknowledge that Plaintiffs have alleged two forms of damages: (1) an alleged diminution in the value of their stock, and (2) the denial of an acquisition premium. Thus, Defendants' primary argument is that Plaintiffs have not alleged loss causation for the measure of damages they seek. Specifically, Defendants contend that Plaintiffs have not alleged: (1) "the extent of the alleged diminution in the value of their stock, or the amount of the acquisition premium they allegedly should have received;" and (2) "*how* the alleged false statements caused them to suffer a loss." (D.I. 58 at 56) (emphasis in original).

Loss causation is relevant to all of Plaintiffs' securities laws claims. With respect to claims under Sections 10 and 14 of the Exchange Act, loss causation is an affirmative element that the plaintiff must plead in his or her complaint. With regard to

claims under Sections 11 and 12 of the Securities Act, loss causation need not be shown as part of the plaintiff's prima facie case. However, a defendant may raise the absence of loss causation as an affirmative defense to a Section 11 and Section 12 claim. 15 U.S.C. § 77k(e), 15 U.S.C. § 77l(b). The burden of establishing the absence of loss causation as an affirmative defense rests on the defendant. *See e.g. In re Fortune Sys. Sec. Litig.*, 680 F.Supp. 1360, 1364 (N.D.Cal.1987).

Loss causation focuses on whether the alleged misrepresentation caused the plaintiff's pecuniary loss. To adequately plead loss causation, the plaintiff "must allege that the misrepresentation was the direct or proximate cause of the economic loss." *Tse v. Ventana Medical Systems, Inc.*, 1998 WL 743668, *6 (D.Del. Sept.23, 1998) (Robinson, J.) ("*Tse I*") (citations omitted). As the Third Circuit has recently recognized, the causation issue "becomes most critical at the proof stage," and the question of "whether the plaintiff has proven causation is usually reserved for the trier of fact." *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 884 (3d Cir.2000).

After reviewing the allegations of the Complaints in the light most favorable to Plaintiffs and drawing all reasonable inferences therefrom in Plaintiffs' favor, the Court concludes that Plaintiffs have adequately alleged loss causation for the purposes of avoiding dismissal. As the Third Circuit recognized in *Semerenko*, allegations that the misrepresentations "directly or proximately caused, or were a substantial contributing cause of, the damages sustained by plaintiff" are adequate to plead causation. *Semerenko*, 223 F.3d at 186. Similarly, allegations that the plaintiff "sustained substantial financial losses as a direct result of the aforementioned misrepresentations and omissions" are also

sufficient to plead causation, even though they do not specifically connect the misrepresentation to the alleged loss. *EP Medsystems, Inc.*, 235 F.3d at 884.

Similar to the allegations in *Semerenko*, Plaintiffs in this case have pled that they were damaged "as a direct and proximate result of defendants" misrepresentations, omissions and unlawful conduct. For example, Glickenhaus has pled: "As a direct and proximate result of defendants' misrepresentations and omissions, plaintiffs were deceived into forsaking the acquisition premium that plaintiffs would have demanded for their sale of their Chrysler shares in connection with a change in control or complete acquisition of Chrysler." (Glickenhaus Cmplt. at ¶ 40). Though not exactly the same, the allegations of Tracinda and Class Plaintiffs are substantially similar to the Glickenhaus allegations, and thus, the Court concludes that Plaintiffs have sufficiently pled loss causation to withstand a motion to dismiss.[11]

Defendants argue that Plaintiffs' allegations are insufficient because they do not quantify the alleged diminution in the value of their stock and do not reveal the amount of the acquisition premium they allegedly should have received. The Court, however, cannot conclude that such an omission is fatal to Plaintiffs' claims.

Because the Court can find no case law requiring Plaintiffs to plead the amount of money they allegedly lost as a result of the alleged diminution in the value of their stock or their lost acquisition premium, the Court cannot conclude that Plaintiffs' Complaints are deficient. *See e.g. Glasser v. The Government of the Virgin Islands*, 853 F.Supp. 852, 854 (D.Vi.1994) (rejecting argument that complaint was legally insufficient because plaintiff did not allege specific dollar amount he should have been paid upon his return to work or request a specific sum of monetary damages in his complaint).

Further, in the Court's view, Defendants' argument is not so much an attack on the sufficiency of the pleadings, as it is an attack on Plaintiffs' ability to ultimately succeed on their claims as a factual matter. For example, Defendants contend that DaimlerChrysler's stock price actually rose for a period after Mr. Schrempp's October 30, 2000 admission. In response, Plaintiffs contend that while the stock price may have risen briefly, it ultimately fell once the complete nature of Defendants' alleged scheme was revealed. The bottom line, however, is that these arguments are fact intensive matters usually requiring expert testimony concerning the state of the fi-

11. For example, in the context of their Section 10(b) claims, Tracinda and Class Plaintiffs have pled:

As a direct and proximate result of defendants' unlawful course of conduct in violation of Section 10(b) of the Exchange Act and Rule 10b–5, Tracinda has been damaged and continues to be damaged in an amount not yet fully determinable, but at least in the amount of the diminution in value of its shares of Chrysler common stock and its shares of DaimlerChrysler common stock, plus the acquisition premium which Daimler–Benz misappropriated. (Tracinda Cmplt. at ¶ 44; Amended Class Cmplt. at ¶ 166). Class Plaintiffs have also pled:

As a direct and proximate result of defendants' fraud, deceit and material omissions, plaintiffs and other members of the Class who purchased DaimlerChrysler stock as part of the consummation of the Merger were deceived into forgoing the "acquisition premium" that they should have received for the sale or exchange of their Chrysler shares in connection with a change in control or complete acquisition of Chrysler. In addition, as a direct and proximate result of defendants' fraud, deceit and material omissions, the price of DaimlerChrysler stock was artificially inflated from November 13, 1998 until the November 17, 2000 announcement. (Amended Class Cmplt. at ¶ 164).

nancial markets and the like. Accordingly, such issues are inappropriate for disposition in the context of a motion to dismiss.

■ Similarly, Defendants contend that Plaintiffs' claim that they were denied an acquisition premium is "wholly speculative" and contrary to the facts. According to Defendants, Plaintiffs were paid a 34% acquisition premium, an amount larger than that offered in comparable transactions, and Plaintiffs have not pled that anyone was willing to pay a higher price for their Chrysler shares. Accordingly, Defendants contend that Plaintiffs cannot state a claim, because their damages for the "lost opportunity" to negotiate a better merger deal are speculative.

A plaintiff can maintain a claim under Section 10(b) of the Exchange Act based on "lost opportunity" damages. *Tse v. Ventana Medical Systems, Inc.*, 123 F.Supp. 213, 222 (D.Del.2000) (Sleet, J.) ("*Tse II*") (citing *Gould v. American–Hawaiian*, 535 F.2d 761, 781 (3d Cir.1976)). However, the damages sustained from a lost opportunity must be actual and non-speculative. *Id.* (citations omitted). Stated another way, the lost opportunity damages must be based on "certain, fixed and demonstrable profits thwarted by a defendant's alleged fraud." *Id.* (citing *Ruding-*

*er v. Insurance Data Processing, Inc.*, 778 F.Supp. 1334, 1340 (E.D.Pa.1991)).

Defendants urge the Court to conclude that Plaintiffs cannot state a claim based on lost opportunity damages, because it is speculative whether Plaintiffs could have obtained a higher acquisition premium from Defendants or any other company. Defendants also contend that the Court must consider the transaction that was negotiated, and not the transaction that the Plaintiffs wished had been negotiated.[12] However, the proper characterization of the transaction that occurred is precisely one of the issues in this case. Plaintiffs allege that the transaction was not a "merger of equals" but actually a take-over, and had Defendants revealed the allegedly true nature of the transaction as a take-over, Plaintiffs would have sought and perhaps more importantly, Defendants may have been willing to pay, a higher acquisition premium.

Defendants contend that this case is analogous to the decision of another court in this district in *Tse II*, 123 F.Supp.2d at 222, and the decision of the District Court for the Eastern District of Pennsylvania in *Rubenstein v. IU International Corp.*, 506 F.Supp. 311, 316. In both *Tse II* and *Rubenstein*, the respective courts acknowledged that the mere claim that one would have been entitled to a "better premium"

---

**12.** Defendants direct the Court to *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54 (2d Cir. 1984) for the proposition that "[a] claim for benefit of the bargain damages must be based on the bargain that was actually struck, not on a bargain whose terms must be supplied by hypotheses about what the parties would have done if the circumstances surrounding their transaction had been different." In *Barrows*, the plaintiffs sold their pharmaceutical manufacturing business in exchange for 22,-000 shares of defendant's common stock. By their complaint, the plaintiffs contended that they never would have reached an agreement with Forest Laboratories for the sale of their business had they known the true financial condition of the company, which the defendant had allegedly concealed. Upholding the district court's dismissal of the plaintiffs' complaint, the Second Circuit concluded that plaintiffs' allegation that they would not have consummated the transaction was speculation. *Barrows* is distinguishable from this case, however, because Plaintiffs are not relying on "a bargain whose terms must be supplied by hypotheses," but on the transaction that actually occurred. Plaintiffs' allegation is that the transaction that occurred was billed as something other than it actually was to conceal its true nature. In other words, the transaction was "a wolf in sheep's clothing."

or a "control premium" is insufficient to sustain a claim for lost opportunity damages. However, both the *Tse II* and *Rubenstein* courts made this determination on a motion for summary judgment, not on a motion to dismiss. Indeed, when *Tse* came before the court on a motion to dismiss, the court concluded that the plaintiffs had adequately alleged a claim for lost opportunity damages. *Tse I*, 1998 WL 743668 at *7. Further, as the Court pointed out, Plaintiffs' allegation in this case is not merely that they would have pressed for a higher acquisition premium had they known the true nature of the transaction (although such an allegation under *Tse I* would have been sufficient to adequately plead a claim), but rather, that Defendants admitted that they would have paid more if the transaction was a take-over.[13] As alleged by Class Plaintiffs in their Complaint:

33. Over the next two months, the parties negotiated the final terms of the transaction, including, importantly, the price. Chrysler was asking for a 40 percent premium and Daimler Benz was offering 20 percent. On April 9, Eaton and Schrempp met in London to resolve the issue.

34. Eaton and Schrempp debated over price for two hours. Schrempp held to Daimler–Benz's 20 percent premium offer. *In response to Eaton's request for 40 percent, Schrempp argued, "Look, if I was acquiring you, I could understand giving that kind of premium. But this isn't an acquisition. It is a merger. Therefore, we shouldn't be looking at anywhere near that kind of a premium.* Eaton explained why Chrys-

ler shareholders were entitled to 40 percent, even though Eaton believed it was a merger of equals. It's all based on the amount of earnings we're bringing in. We'll be bringing in half the profits. We deserve that kind of a premium." Eventually, Schrempp prevailed and Eaton agreed to take $57.50 a share, representing a 28 percent premium. Had Eaton known the truth—that Daimler–Benz did not intend a merger of equals—he would have either canceled the deal or insisted upon an even greater premium than the 40% he wanted simply based upon the undervaluation of Chrysler stock.

(Amended Class Cmplt. at ¶¶ 33, 34) (emphasis added).

Of course, whether Plaintiffs can offer sufficient proof in support of their allegations to withstand summary judgment later in the proceedings is an entirely different question. At this stage, Plaintiffs' allegations are cloaked in the presumption of truth. Stripped of this presumption on summary judgment, Plaintiffs' allegations may well be reduced to speculation, unless they are able to present sufficient proof through discovery to sustain their allegations. However, for purposes of the instant Motion, the Court concludes that Plaintiffs have adequately alleged loss causation and lost opportunity damages so as to avoid dismissal.

## V. Whether Plaintiffs Have Satisfied The Pleading Requirements Of Rule 9(b) Of The Federal Rules Of Civil Procedure And The Pleading Requirements Of The Exchange Act

Defendants next contend that Plaintiffs have failed to satisfy the pleading require-

---

**13.** It should be noted that the Complaints filed by Tracinda and Glickenhaus do not make the same averments as Class Plaintiffs' Complaint on this issue. However, both Tracinda and Glickenhaus allege that Defendants "misappropriated" the acquisition premium due Plaintiffs. Construing these allegations and all reasonable inferences therefrom in Plaintiffs' favor, the Court concludes in light of the *Tse I* decision that these allegations are sufficient to state a claim for lost opportunity damages.

ments of Federal Rule of Civil Procedure 9(b) and the Exchange Act. In response, Plaintiffs contend that the pleading requirements of the Exchange Act do not apply to their claims under Section 14(a) of the Exchange Act. In the alternative, Plaintiffs contend that even if the heightened pleading standards apply to their Rule 14(a) claims, they have satisfied that pleading standard for all their claims.

In addition to the standards for pleading under Rule 9(b) discussed previously, the Private Securities Litigation Reform Act ("PSLRA") requires the complaint to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . ." 15 U.S.C. § 78u–4(b)(1). As a threshold matter, the parties dispute the applicability of the PSLRA's pleading requirements to Plaintiffs' claims under Section 14 of the Exchange Act. In addition, Plaintiffs contend that the pleading requirements of Rule 9(b) do not apply to their claims under Sections 11 and 12 of the Securities Act.

■■■■■ While negligence can form the basis of liability for claims under Sections 11 and 12 of the Securities Act, if those claims sound in fraud, they are subject to the heightened pleading requirements of Rule 9(b). *See Shapiro*, 964 F.2d at 287–288. Similarly, Section 9(b) is appropriately applied to claims under Section 14 of the Exchange Act if they sound in fraud. *In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, *21 (E.D.Pa. Oct.17, 2001); *Charal*, 131 F.Supp.2d at 602–603.

In the Court's view, Plaintiffs' securities claims sound in fraud, rather than negligence. Accordingly, the Court concludes that the heightened pleading standard of Rule 9(b) and the PSLRA applies to Plaintiffs' Complaints.

■■■■ Applying the standards of Rule 9(b) and the PSLRA to Plaintiffs' Complaints, the Court concludes that taken as a whole, Plaintiffs' Complaints satisfy the heightened pleading requirements. For example, Defendants direct the Court to "excerpts" of Plaintiffs' allegations wherein Plaintiffs state that Defendants made "various representations of material facts that were untrue or misleading" including false and misleading statements "from February through May 1998." (See e.g. Tracinda Cmplt. at ¶ 40). However, Plaintiffs' allegations go on to state that the precise misrepresentations referred to are the misrepresentations that the merger would be a merger of equals. Further, Plaintiffs have asserted facts describing the "who, what, where and when" related to these alleged misrepresentations in previous paragraphs of the Complaints describing in detail the meetings between Mr. Schrempp and Mr. Eaton in which these alleged misrepresentations were made. (See e.g. Glickenhaus Cmplt. at ¶ 19, 24, Amended Class Cmplt. at ¶¶ 28, 29, 30, 31, 33–34, 37–40).

In further support of their contentions, Defendants direct the Court to Tracinda's allegation that meetings occurred between "Mr. Eaton, other Chrysler senior executives and their legal and investment banking advisors" and "Mr. Schrempp, other Daimler–Benz senior executives and their legal advisors" whereby the parties continued to "refine in greater detail potential plans for a 'merger of equals' between Chrysler and Daimler–Benz." (Tracinda Cmplt. at ¶ 19). Defendants contend that this allegation fails to set the specific time frame for the meetings, fails to name the individuals involved and fails to allege precisely what they said that was fraudulent. In the Court's view, however, this allegation is not so much an averment of fraud as an averment of background information meant to provide background and develop

the relevant facts. If Plaintiffs were alleging that false statements were made at this meeting, then the Court would agree that Plaintiffs' allegation may lack specificity, and the Court could provide Plaintiffs with an opportunity to amend the Complaint. However, the Court does not understand Plaintiffs to be alleging that any oral misrepresentations were made at these meetings, but only that the meetings occurred to further the plans for the proposed merger.

Likewise, Defendants point to a background allegation concerning Mr. Gentz in which Plaintiffs allege that "Mr. Schrempp with the assistance of Messrs. Gentz and Kopper solicited all of Chrysler's public shareholders by causing Daimler–Benz and DaimlerChrysler to prepare and file a registration statement with the SEC in August 1998 that repeated and reinforced all of Daimler–Benz's earlier promises to Chrysler and Tracinda." (Tracinda Cmplt. ¶ 4, Glickenhaus Cmplt. ¶ 4). Defendants contend that this allegation is inadequate, because "[o]ther than alleging that Mr. Gentz signed the registration statement, the only allegations connecting him to any alleged fraud is that he provided unspecified 'assistance' to Mr. Schrempp." (D.I. 58 at 53, n. 24). Again, the Court understands that Plaintiffs' claims against Mr. Gentz are not based on misrepresentations he made to Plaintiffs. Rather, the Court understands Plaintiffs' claims against Mr. Gentz to be based on controlling person liability, i.e. that he should have known of the previous violations by other Defen-

dants like Mr. Schrempp, and on Section 14 of the Exchange Act and Sections 11 and 12 of the Securities Act due to his alleged involvement in preparing and signing the registration statement. To the extent that the Court has misconstrued Plaintiffs' claims against Mr. Gentz and those claims are for other fraudulent conduct and/or misstatements attributable to him specifically, the Court would agree with Defendants that further factual specificity regarding Mr. Gentz's role would be required. However, at this juncture, the Court cannot conclude that Plaintiffs' allegations against Mr. Gentz are insufficient to form the basis for the claims presently asserted against him.

In sum, taking the allegations of the Complaints as a whole and in context, the Court cannot conclude that Plaintiffs have failed to plead their claims with the requisite specificity required by the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure.[14] Accordingly, the Court will deny Defendants' Motion To Dismiss based on the failure to adhere to the heightened pleading requirements for securities fraud claims.

## VI. Whether Plaintiffs' Controlling Person Claims Should Be Dismissed

◼ By their Motion, Defendants next contend that Plaintiffs' controlling person claims under Section 20 of the Exchange Act and Section 15 of the Securities Act should be dismissed, because Plaintiffs have failed to demonstrate underlying vio-

---

14. By way of further example, Defendants direct the Court to Tracinda's allegation that "[b]ut for Daimler–Benz's representation that the transaction was a 'merger of equals,' Tracinda would not have executed the Stockholder Agreement." (Tracinda Cmplt. at ¶ 21). According to Defendants, this statement fails to specify which representation Tracinda contends that it relied upon. However, the other

allegations of the Complaint, illuminate this allegation and make it apparent that Tracinda is relying upon Mr. Schrempp's repeated representations during the merger negotiations to Mr. Eaton and communicated to Tracinda's Mr. Kerkorian with Mr. Schrempp's knowledge and consent, that the proposed transaction was to be a "merger of equals."

lations of Section 10(b) of the Exchange Act and Sections 11 and 12 of the Securities Act. In addition, Defendants contend that Plaintiffs' controlling person claims against Defendant Gentz should be dismissed, because Plaintiffs have not alleged sufficient facts to demonstrate that Defendant Gentz participated in the alleged fraud.

Because the Court has previously concluded that Plaintiffs have adequately alleged underlying securities violations under Section 10(b) of the Exchange Act and Sections 11 and 12 of the Securities Act, the Court concludes that Plaintiffs have adequately alleged controlling person claims predicated upon these alleged violations. *See e.g. In re Cephalon Securities Litigation*, 1997 WL 570918, *2 (E.D.Pa. Aug.29, 1997) (recognizing that where primary violations were adequately alleged, controlling person claims will withstand dismissal).

As for the allegations related to Defendant Gentz, the Court likewise concludes that Plaintiffs have adequately pled a controlling person claim against Defendant Gentz. "Allegations that 'support a reasonable inference that [defendants] had the potential to influence and direct the activities of the primary violator' suffice to plead control person liability.... Allegations that a director signed a fraudulent SEC filing and was in a position to exercise control over the primary violator are sufficient to withstand a motion to dismiss." [15] *In re Tel–Save Sec. Litig.*, 1999 WL 999427, *6–7 (E.D.Pa. Oct.19, 1999) (citations omitted). Plaintiffs have alleged that Defendant Gentz was a control person by virtue of his position in and activities at Daimler–Benz. Plaintiffs have also alleged that Defendant Gentz was culpably involved in the alleged fraud by participating in the preparation and dissemination of the Proxy/Prospectus and by signing the registration statement filed in connection with the Proxy/Prospectus. (See e.g. Glickenhaus Cmplt. ¶¶ 15–17, 50–54; Tracinda Cmplt. ¶¶ 14–16; 46–49; Class Complt. ¶¶ 15–18, 138–142). Accordingly, the Court concludes that Plaintiffs' have sufficiently pled the elements of their controlling persons claims to withstand dismissal, and therefore, the Court will deny Defendants' Motion To Dismiss Plaintiffs' claims under Section 20 of the Exchange Act and Section 15 of the Securities Act.

## VII. Whether Tracinda Has Adequately Pled A Claim Under Section 14(a) Of The Exchange Act

In addition to their previous arguments related to Plaintiffs' Section 14(a) claims, Defendants contend that with regard to Tracinda in particular, independent reasons require dismissal of Tracinda's Section 14(a) claims. Specifically, Defendants contend that Tracinda cannot plead the required connection between its

---

**15.** In their Reply Brief, Defendants attempt to distinguish *Tel–Save*. Defendants contend that the *Tel–Save* court found a Section 20 control person claim had been stated based on the same allegations that the court found sufficient to state a Section 10(b) claim. In contrast, Defendants contend that Plaintiffs have not alleged a Section 10(b) claim against Defendant Gentz. The Court is not persuaded by Defendants' argument. While the same allegations that supported a Section 10(b) claim were relevant to the *Tel–Save* court's analysis of the Section 20 claim, it is evident from the opinion in *Tel–Save* that the Court independently evaluated the allegations as they related to the plaintiffs' Section 20 claim. Moreover, it is not surprising that a court, in analyzing a Section 20 claim would look to the allegations related to the primary violations of the securities laws, as it is upon these primary violations that a controlling person claim is based. Thus, the Court cannot conclude that Plaintiffs' controlling person claim against Defendant Gentz is fatally defective, because Plaintiffs have not alleged a Section 10(b) claim against Defendant Gentz.

vote in favor of the merger and the alleged misrepresentations in the Proxy/Prospectus, because Tracinda agreed to vote its shares in favor of the merger before the Proxy/Prospectus was ever issued.

In response, Tracinda contends that the Stockholder Agreement was not a proxy, in and of itself, but a promise to vote its shares. To this effect, Tracinda contends that if it had learned of Defendants' allegedly false statements in the Proxy/Prospectus, it could have rescinded or sought to rescind either the Stockholder Agreement and/or the vote of its shares. In addition, Tracinda contends that it also could have contacted other stockholders and urged them to reject the proposed transaction.

In response, Defendants refute Tracinda's characterization of the Stockholder Agreement as a prelude to the formal proxy solicitation. Pointing to the integration clause, Defendants contend that the Stockholder Agreement was not a prelude to a more formal proxy solicitation, but was the entire agreement concerning how Tracinda would vote its shares. In addition, Defendants contend that Tracinda was contractually bound not to lobby other shareholders for any purpose, by another agreement, the Standstill Agreement. According to Defendants, Tracinda signed the Standstill Agreement in February 1996 after its own failed attempt to take control of Chrysler, and the terms of the Agreement did not expire until February 2001.

Construing the Complaint in the light most favorable to Tracinda and accepting Tracinda's allegations as true, the Court concludes that Tracinda is not precluded at this juncture from alleging such a claim based on the Stockholder Agreement or the Standstill Agreement. By its Complaint, Tracinda alleges that, although it

signed the Stockholder Agreement, its vote in favor of the merger was not unconditional. Specifically, Tracinda alleges that its vote was conditioned on the recommendation of Chrysler's board of directors and on the veracity of Defendants' representations throughout the negotiations with Mr. Eaton and in the Proxy/Prospectus that the merger would be a "merger of equals." (Tracinda Cmplt. at ¶ 21). Tracinda further alleges that the Chrysler board of directors considered the "merger of equals" language and Tracinda's support of the merger to be relevant considerations in its recommendation of the merger. (Tracinda Cmplt. at ¶¶ 21, 27). However, Tracinda alleges that it never would have executed the Stockholder Agreement or supported the merger, if it had known that the transaction was not going to be a merger of equals but a takeover of Chrysler by Daimler–Benz. (Tracinda Cmplt. at ¶ 21). Of course, the question of whether Tracinda's claim can survive summary judgment in light of the Stockholder Agreement, the Standstill Agreement and the other evidence is another question. For purposes of the instant Motion To Dismiss, the Court concludes that Tracinda is not precluded from alleging a Section 14(a) claim.

## VIII. Whether Tracinda Has Adequately Pled A Claim For Civil Conspiracy

Defendants next contend that Tracinda has failed to plead a claim for civil conspiracy under Delaware law. Specifically, Defendants contend that Tracinda has not alleged (1) an underlying wrong; (2) damages, or (3) an unlawful act done in furtherance of the conspiracy.

In response, Tracinda contends that California law, not Delaware law applies to its civil conspiracy claim. Applying California

law, Tracinda alleges that it has adequately pled a claim for civil conspiracy.

In the Court's view, the parties' choice of law arguments are most relevant to the question of whether Tracinda has pled an unlawful act done in furtherance of the conspiracy. By its argument, Tracinda appears to suggest that California law does not require a plaintiff to plead this element. However, a comparison of the law from both states indicates that for all practical purposes, California law and Delaware law are identical with regard to civil conspiracy.

■ To establish a claim for civil conspiracy, a plaintiff must plead an (1) agreement to participate in an unlawful act, (2) an injury, and (3) an unlawful overt act in furtherance of the agreement. *Alfus v. Pyramid Technology Corp.*, 745 F.Supp. 1511 (N.D.Cal.1990) ("[T]o state a claim for conspiracy, a plaintiff must plead both an agreement to participate in an unlawful act, and an injury caused by an unlawful overt act performed in furtherance of the agreement."); *S & R Associates, L.P., III v. Shell Oil Co.*, 725 A.2d 431 (Del.Super.1998) ("The elements of civil conspiracy include: 1) a confederation or combination of two or more persons; 2) an unlawful act done in furtherance of the conspiracy; and 3) actual damages."). Under both California and Delaware law, civil conspiracy is not an independent cause of action, and thus, a civil conspiracy claim must be predicated upon an underlying wrong. *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211 (9th Cir.1997) (applying California law); *Ramunno v. Cawley*, 705 A.2d 1029, 1039 (Del.1998). Further, both California and Delaware apply a heightened pleading standard to claims of civil conspiracy. *Alfus*, 745 F.Supp. at 1521; *Ramunno*, 705 A.2d at 1039.

■ After reviewing the allegations of Tracinda's Complaint, the Court concludes that Tracinda has failed to adequately plead a claim for civil conspiracy. Although Tracinda has alleged an actionable underlying wrong and damages as discussed by the Court in the context of Plaintiffs' securities claims, the Court concludes that Tracinda has not adequately pled an unlawful act done in furtherance of a conspiracy. Tracinda pleads a conspiracy and common enterprise among Defendants [16], that Defendants acted intentionally and with awareness of their wrongdoing, and that Defendants caused damage by perpetrating the conspiracy. (Tracinda Cmplt. at ¶¶ 84–86). However, Tracinda does not make any allegation regarding an unlawful act done in furtherance of the conspiracy. Because Tracinda has failed to plead the required elements of a civil conspiracy claim, the Court will grant De-

---

**16.** Though not specifically raised by Defendants in their Motion To Dismiss, the Court also expresses doubt as to whether Tracinda has adequately pled an agreement among the parties to commit an unlawful act. Elsewhere in its Complaint, Tracinda makes allegations concerning each Defendant and his respective role in the alleged fraudulent scheme. However, in the Court's view, these allegations do little to illuminate Tracinda's conspiracy claim, because they do not establish an agreement among Defendants to commit the alleged wrongful acts. Indeed, even under California law which Tracinda contends applies to its claim, allegations of conspiracy, common enterprise and common course of conduct without specific allegations regarding an agreement by the parties are insufficient to withstand a motion to dismiss. *See e.g. Alfus*, 745 F.Supp. at 1521; *Alfus v. Pyramid Technology Corp.*, 764 F.Supp. 598, 606–607 (N.D.Cal.1991) ("It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves toward this wrongful goal by virtue of a mutual understanding or agreement.") (citations omitted).

fendants' Motion To Dismiss Tracinda's claim for civil conspiracy.

## IX. Whether Class Plaintiffs' "Merger Of Equals" and "Channel Stuffing" Allegations Adequately State A Claim

In addition to their previous arguments directed to all three Complaints in this action, Defendants raise additional arguments directed solely to Class Plaintiffs' Amended Class Complaint. Specifically, Defendants contend that Class Plaintiffs' "merger of equals" allegations and "channel stuffing" allegations fail to state actionable claims.

### A. Whether The Class Plaintiffs' Merger of Equals Allegations State A Claim

■ With regard to Class Plaintiffs' "merger of equals" allegations, Defendants advance those arguments which the Court has previously addressed, as well as the additional arguments that (1) the Class Plaintiffs have not alleged that Defendants' oral statements regarding the "merger of equals" were communicated to Chrysler shareholders; and (2) cautionary statements regarding the benefits of the merger render any representations related to such benefits inactionable.

After reviewing Class Plaintiffs' allegations in the light most favorable to Class Plaintiffs, the Court concludes that Class Plaintiffs have alleged an actionable claim based on their merger of equals allegations. Defendants contend that Class Plaintiffs have not alleged that Defendants' oral statements were communicated to investors or made with the expectation that they would be communicated to investors. However, Class Plaintiffs have alleged that the merger was introduced to the public as a merger of equals. (Amended Class Cmplt. at ¶¶ 43–46, 58). To this

effect, Class Plaintiffs detail numerous articles in the print media quoting both Daimler–Benz and Chrysler executives that the transaction was to be a merger of equals. Thus, Class Plaintiffs have adequately alleged that Defendants intended these representations to be passed on to Chrysler's shareholders. *Bell v. Fore Systems, Inc.,* 17 F.Supp.2d 433, 439 (W.D.Pa. 1998). (recognizing that misrepresentations made to analysts with the intent that they will be disseminated to the public are actionable securities violations) (citing *Cooper v. Pickett,* 137 F.3d 616, 624 (9th Cir. 1997)). Accordingly, at this juncture, the Court cannot conclude that Class Plaintiffs' allegations relating to the merger of equals fail to state a claim.

■ As for Defendants' argument that cautionary statements in the Proxy/Prospectus render the alleged misrepresentations and omissions immaterial, the Court likewise concludes that Class Plaintiffs' allegations withstand Defendants' dismissal efforts. Defendants specifically direct the Court to Class Plaintiffs' allegation that the Proxy/Prospectus identified a material factor underlying the Chrysler board's approval of the merger as "[t]he opportunities for significant synergies afforded by a combination of Chrysler and Daimler–Benz—based not on plant closings or layoffs, but on such factors as shared technologies, distribution, purchasing and knowhow." (Amended Class Cmplt. at ¶ 53(c)). According to Defendants, Class Plaintiffs were never promised that the merger would lead to synergies, and the Proxy/Prospectus spoke only to the fact that the Chrysler board saw "opportunities" for synergies. Defendants further contend that the Proxy/Prospectus disclosed that these synergies might never be achieved when it warned shareholders that:

Although the management of Chrysler and Daimler–Benz expect the Transaction will produce substantial synergies, the integration of two large companies, incorporated in different countries, with geographically dispersed operations, and with different business cultures and compensation structures, presents substantial management challenges. There can be no assurance that this integration, and the synergies expected to result from that integration, will be achieved as rapidly or to the extent currently anticipated.

(D.I. 58 at 17) (*citing* Proxy/Prospectus at 24).

The consideration of cautionary language when evaluating the materiality of misstatements and omissions is commonly referred to as the "bespeaks caution" doctrine. This doctrine essentially requires courts to consider the alleged misstatements or omissions in their proper context. *In re ValueVision*, 896 F.Supp. at 442. Stated another way, when forward-looking statements about such things as future economic performance and plans and objectives for management "are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim *if those statements did not affect the 'total mix' of information the document provided investors.*" *Id.* (citing *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 371 (3d Cir.1993)) (emphasis added). "[T]o conclude that cautionary statements render the misrepresentations and omissions immaterial, *a defendant must prove that the cautionary statements 'discredit the other one so obviously that the risk of real deception drops to nil.'*" *Id.* (citing *Virgi-*

*nia Bankshares, Inc.*, 501 U.S. at 1097, 111 S.Ct. 2749) (emphasis added).

On a motion to dismiss, however, courts are generally reluctant to determine materiality unless the alleged misrepresentations or omissions are "so obviously unimportant that reasonable minds cannot differ on the question of materiality." *In re Donald J. Trump Casino*, 7 F.3d at 369 n. 13 (quoting *Shapiro*, 964 F.2d at 280 n. 11). Consistent with the standard for a motion to dismiss, the defendant must show that there are no facts under which the plaintiff will be able to establish that the alleged misrepresentations and omissions were material.

After reviewing the misstatements and omissions alleged by Class Plaintiffs in the context of the cautionary language relied upon by Defendants, the Court cannot conclude at this juncture that the cautionary statements are sufficient to render the statements and omissions immaterial as a matter of law. First, the cautionary statements do not say that the expected synergies might never be achieved, but only that the may not be achieved "as rapidly or to the extent currently anticipated."[17] In the Court's view, such a statement does not thoroughly discredit the representations about expected synergies so as to virtually eliminate the risk of real deception. *Virginia Bankshares*, 501 U.S. at 1097, 111 S.Ct. 2749.

Further, the Court cannot conclude that the cautionary statements cure what Plaintiffs are alleging which is an intentional misrepresentation about the true nature of the transaction. In this way, the situation in this case is analogous to the situation in *ValueVision*, 896 F.Supp. at 434. In *ValueVision*, the court concluded on a motion

---

17. This concept is reinforced in the question and answer section of the Proxy/Prospectus. In that section, the question is asked, "Are there risks to be considered?" The response reiterates that the synergies might "not be obtained to the extent and as promptly as now expected," but does not indicate that they may never materialize. (D.I. 60, Ex. A at 2).

to dismiss, that the cautionary statements offered about obtaining financing were insufficient to correct the mistaken impression that *ValueVision* left its investors. According to the *ValueVision* court:

> [I]f ValueVision intended to pursue only junk bond financing, and if reasonable investors did not anticipate this intention, and if this intention substantially narrowed the range of acceptable interest rates, investors could have been misled as to the likelihood that ValueVision would find financing on terms it would accept. Value Vision's purported cautionary statements do not conclusively correct this mistaken impression.

*Id.* at 442–443.

In this case, Class Plaintiffs are alleging that investors were left with the mistaken impression that the merger would be a merger of equals, when in fact, Defendants never intended an equal combination. Thus, the Court cannot conclude that no set of facts exist under which the Class Plaintiffs could prove their claims. Accordingly, the Court will deny Defendants' Motion To Dismiss insofar as it challenges the Class Plaintiffs' allegations related to the merger of equals.

B. *Whether The Class Plaintiffs' Channel Stuffing Allegations Adequately State A Claim*

Defendants also contend that Class Plaintiffs' channel stuffing allegations fail to state a claim. Specifically, Defendants contend that (1) the Amended Class Complaint fails to adequately specify the sources of the allegations it pleads on information and belief; (2) the allegations concerning the December 1999 press releases and the 1999 Form 20–F fail to identify any actionable misstatements or omissions; (3) the channel stuffing allegations are conclusory and identify no actionable misstatements or omissions; (4) the

Amended Class Complaint fails to allege facts giving rise to a strong inference of scienter; and (5) the Amended Class Complaint fails to allege particularized facts inculpating the individual Defendants in the alleged fraud.

1. Whether the Amended Class Complaint adequately pleads the sources of the allegations it pleads on information and belief

■ Unlike the Complaints filed by Tracinda and Glickenhaus, the allegations in the Amended Class Complaint are primarily asserted upon information and belief, rather than on Class Plaintiffs' personal knowledge of the facts. Under the PSLRA, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

Though easy to articulate, the application of this standard is difficult. Indeed, there has been a divergence of views on how strictly this standard should be applied, some within courts of the same district. *Compare In re Nice Sys., Ltd. Sec. Litig.,* 135 F.Supp.2d 551, 568–573 (D.N.J. 2001) and *In re Campbell Soup Co. Sec. Litig.,* 145 F.Supp.2d 574 (D.N.J.2001). Although the parties in the case at bar concede the divergence, they agree that "at a minimum a complaint must identify its sources with sufficient particularity to support a conclusion that 'a person in the position occupied by the source would possess the information alleged.'" (D.I. 58 at 28, n. 15 (quoting *Novak v. Kasaks,* 216 F.3d 300, 314 (2d Cir.), *cert. denied,* 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000)); D.I. 71 at 62).

Defendants contend that Class Plaintiffs have not adequately set forth the basis for the allegations they have pled on information and belief, because Class Plaintiffs do

not link these sources to their substantive allegations and do not identify specific information within each alleged source that supports their allegations. In response, Class Plaintiffs contend that their allegations are properly pled, because they have identified the sources they relied upon in the introductory paragraph of their Amended Class Complaint. In particular, Class Plaintiffs contend that they are permitted to rely on reputable newspapers and business periodicals they cite in the introductory paragraph as the basis for their allegations. Class Plaintiffs further contend that they have identified witnesses with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.

The Court finds a degree of validity in the contentions of both the Class Plaintiffs and Defendants. In the Court's view, some allegations of the Amended Class Complaint are adequately pled, others are not. For example, Class Plaintiffs' introductory paragraph of the Amended Class Complaint states:

> Plaintiffs' information and belief are based upon, among other things, their investigation of (a) the complaint in the action captioned *Tracinda Corporation v. Daimler Chrysler AG*, et al., C.A. No. 00–984 filed in this Court on November 27, 2000 (the "Tracinda Complaint"); (b) a registration statement filed with the Securities & Exchange Commission ("SEC") on or about August 6, 1998 under the Securities Act of 1933 on Form F–4 listing the registrant as "DAIMLERCHRYSLER AG as successor corporation to DAIMLER–BENZ AKTIENGESELLSCHAFT," and the proxy statement, prospectus and other addenda made a part thereof (collectively, the "Proxy/Prospectus"); (c) other filings made by DaimlerChrysler AG with the SEC; (d) press releases, public statements, news articles, securities analysts' reports and other publications disseminated by or concerning DaimlerChrysler, including an article published in the October 30, 2000 *Financial Times* reporting on an interview with Jurgen E. Schrempp, one of the defendants herein, an article from the November 4, 2000 edition of *Barron's Magazine*, also recounting an interview with Schrempp, and an article published in the March 5, 2001 issues of *Forbes* reporting on interviews with former Chrysler executives; (e) the book entitled, *"Taken For A Ride: How Daimler–Benz Drove Off With Chrysler,"* by Bill Vlasic and Bradley A. Stertz (William Morrow, 2000); (f) statements from former Chrysler Corporation and former DaimlerChrysler executives, employees, suppliers and dealers of Chrysler and DaimlerChrysler; and (g) other publicly available information about DaimlerChrysler.

(Amended Class Cmplt. at p. 1,2).

Standing alone, the Court finds this paragraph to be inadequate to meet the enhanced pleading requirements of information and belief allegations under the PSLRA. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir.1999). To the extent that other allegations in the Amended Class Complaint elaborate on this paragraph by identifying and discussing the press releases, reports, or SEC filings relied upon for the information alleged, the Court finds these allegations sufficient. (See e.g. Amended Class Cmplt. at ¶¶ 82, 83). However, there are other allegations which are not adequately supported. For example, Class Plaintiffs describe the facts supporting their channel stuffing allegations with quotes from various Chrysler dealers, but they do not identify the source for this information. Class Plaintiffs contend that identifying that the information was stated by a large North-

eastern dealer is sufficient, because the position of the person demonstrates that they would likely possess the information alleged. The Court understands that Class Plaintiffs need not specify the name of the dealer if they do not know its name, but rather, the Court believes it must require this and other allegations in the Amended Class Complaint to be supported by identifying the source from which such allegations originate. In other words, in the Court's view, Class Plaintiffs have not adequately and consistently linked their sources of information to their allegations or identified the information from their sources that supports their allegations.[18] *See Silicon Graphics,* 183 F.3d at 985 (dismissing complaint for failure to adhere to PSLRA where individual allegations were not attributed to particular sources and complaint alleged one paragraph stating that plaintiff's counsel conducted investigation of SEC filing, analyst reports, press releases, and media coverage of company); *Branca v. Paymentech, Inc.,* 2000 WL 145083, *7 (N.D.Tex. Feb.8, 2000).

Defendants also take issue with Class Plaintiffs' reliance on articles from newspapers and periodicals. Defendants contend that such reliance is insufficient to meet the heightened pleading requirements of the Exchange Act and direct the Court to the Third Circuit's decision in *Garr v. U.S. Healthcare, Inc.,* 22 F.3d 1274, 1280–1281 (3d Cir.1994) in support of their position. According to Defendants, *Garr* undercuts the Third Circuit's decision in *Lewis v. Curtis,* a case in which the Third Circuit condoned reliance on a news-

paper article for purposes of pleading verification under Rule 23.1. *Lewis,* 671 F.2d 779, 788 (3d Cir.1982) ("Reliance on an article in *The Wall Street Journal* is not reliance on an insubstantial or meaningless investigation. Plaintiffs and their attorneys need not make further expenditures to prove independently that which may be read with some confidence of truthfulness and accuracy in a respected financial journal."). The rationale of the *Lewis* decision was later applied to the pleading requirements for securities cases in *In re Ramada Inns Sec. Litig.,* 550 F.Supp. 1127, 1134–1135 (D.Del.1982).

After reviewing Class Plaintiffs' allegations based on media reports in light of the applicable case law, the Court concludes that Class Plaintiffs' allegations, to the extent that they clearly identify the media sources upon which they rely, are sufficient under Third Circuit precedent to satisfy the heightened pleading standard under the securities laws. The Court finds the circumstances of the *Garr* decision to be distinguishable from the case at bar. In *Garr,* the Third Circuit concluded that an attorney could not satisfy the requirement of reasonable inquiry into the contents of a pleading under Federal Rule of Civil Procedure 11 by relying solely on a newspaper article and the investigation of another attorney. In so holding, the court did not discuss its prior decision in *Ramada,* and the court did not overrule its previous decision in *Lewis.* Rather, the Court found *Lewis* inapposite for two reasons. First, the court observed that the

---

**18.** By way of another example, Class Plaintiffs cite the book *Taken For A Ride* as a source for their allegations in their introductory paragraph, but Class Plaintiffs never refer to the book elsewhere in their Complaint. As Defendants note, Plaintiffs "are apparently content to leave it to the Court and the defendants to peruse the several hundreds of pages of that book in search of support for the allegations of the [Amended] Class Complaint." (D.I. 84 at 12 n. 7). According to Class Plaintiffs the book *Taken For A Ride* is the basis for "most" of Class Plaintiffs' merger of equals allegations. Thus, the Court's discussion of these pleading deficiencies applies equally to Class Plaintiffs' merger of equals allegations to the extent that they are based upon information and belief.

*Lewis* decision pertained to verification under Rule 23.1 and not the reasonable inquiry requirement under Rule 11. Second, the court observed that the *Wall Street Journal* article upon which the attorney relied could not have been sufficient, because the attorney alleged that U.S. Healthcare had been filing false and misleading quarterly reports with the SEC and the *Wall Street Journal* report did not deal with that issue.

Though perhaps related, in this case, the issue is not Rule 11's reasonable inquiry requirement, but the pleading requirements under the PSLRA. Further and perhaps more importantly, unlike *Garr*, in this case, Class Plaintiffs do not rely solely on newspaper articles without having conducted an independent investigation. Rather, Class Plaintiffs have pled that they conducted an independent investigation and consulted numerous other documents, and the Court must accept these allegations as true.

Indeed, the Court has been unable to locate any cases forbidding pleadings based on newspaper and media accounts, and Defendants have not identified any such cases for the Court. Those cases which the Court has examined do not raise a blanket prohibition on allegations based on newspaper and other media accounts. Rather, those courts have identified specific problems with the allegations as they relate to the newspaper account. For example, in *In re Party City Sec. Litig.*, 147 F.Supp.2d 282, 308 (D.N.J.2001), the court found plaintiffs' allegation based on a newspaper article to be insufficient, because the article did not identify facts, but stated the author's opinion that the company at issue was "outta control." Further, the plaintiffs did not provide any factual allegations elaborating on the article. *Id.* ("Indeed the Second Amended Complaint fails to set forth what [the article] was

referring to have been 'outta control.' "). In this case, however, the articles referenced by Class Plaintiffs articulate a factual basis and are not merely opinions. Moreover, in most cases in which Class Plaintiffs refer to media sources, Class Plaintiffs elaborate on the articles with additional factual allegations, although in some instances the sources for those allegations are not adequately identified as discussed previously.

Further, that Class Plaintiffs may rely on newspaper and other media sources if certain requirements are met is at least implicitly acknowledged by Defendants in their reference to *McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d 1248 (N.D.Cal. 2000). Referring to the Third Circuit's decision in *Lewis*, the *McKesson* court recognized that newspaper articles can form the basis for adequate pleading under the PSLRA if they are sufficiently detailed to indicate their reliability and are based on an independent investigative effort. *McKesson*, 126 F.Supp.2d at 1272. Defendants contend that *McKesson* is distinguishable, because Class Plaintiffs did not conduct an independent investigation and do not rely on facts other than those cited in the articles. However, the Court is persuaded otherwise for two reasons. First, Defendants contend that *McKesson* requires independent investigative efforts by a plaintiff for a newspaper article to satisfy the PSLRA. However, Defendants' argument misreads *McKesson*. *McKesson* requires that the article be the result of independent investigative efforts by those authoring or sponsoring the article. 126 F.Supp.2d at 1272 (discussing the pleading of scienter in particular and holding that "*if the newspaper article* includes numerous factual particulars and is based on an independent investigative effort, it is a source that may be credited in determining whether plaintiffs have alleged facts sufficient to raise a strong inference of

scienter") (emphasis added). Additionally, even if the Court were to read *McKesson* as Defendants do and require an investigation independent of the article for the purposes of satisfying the PSLRA,[19] the Court would conclude that Class Plaintiffs have satisfied that requirement by their assertions, which the Court must accept as true, that they conducted an investigation of the documents and sources underlying their Amended Class Complaint. Accordingly, the Court concludes that Class Plaintiffs' allegations derived from reputable media sources and clearly identified as such in the Amended Class Complaint are sufficient to meet the requirement of the PSLRA.

■ In conclusion, the Court will dismiss the Class Plaintiffs' Amended Class Complaint, because Class Plaintiffs have not met their burden under the PSLRA. Although the Court concludes that Class Plaintiffs may use media sources as support for their allegations against Defendants, the Court further concludes that Class Plaintiffs have not sufficiently complied with the PSLRA requirements for pleading allegations based upon information and belief. Specifically, the Court concludes that Class Plaintiffs have failed to adequately identify and link the sources they cite in the introductory paragraph of the Amended Class Complaint with the allegations of misconduct by Defendants derived from those sources. Stated another way, the Court concludes, as Defendants contend, that Class Plaintiffs must reasonably link in a particularized way, their sources with the allegations derived from those sources. Because this deficiency relates to Class Plaintiffs' merger of equals and channel stuffing allegations, the Court will grant Defendants' Motion and dismiss the Amended Class Complaint in its entirety.

2. Whether the allegations concerning channel stuffing fail to identify any actionable misstatements or omissions

■ Defendants contend that Class Plaintiffs' channel stuffing claims are basically mismanagement claims, which are not actionable under the securities laws. In response, Class Plaintiffs contend that they have adequately pled that the alleged channel stuffing was part of Defendants' plan to complete their alleged fraudulent take-over of Chrysler. Class Plaintiffs further allege that Defendants' channel stuffing was the result of a "sham" incentive program. Absent this deception, Class Plaintiffs contend that Chrysler group's revenues would have been approximately $14.62 billion, not $17.2 billion, and instead of $1.1 billion in operating profit, the Chrysler group would have had none.

"Channel stuffing" has been defined as "the oversupply of distributors in one quarter to artificially inflate sales, which will then drop in the next quarter as the distributors no longer make orders, while they deplete their excess supply." *In re Splash Technology Holdings Inc. Sec. Litig.*, 160 F.Supp.2d 1059, 1076 (N.D.Cal. 2001) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir.1998)). At least one circuit, the Ninth Circuit, has rejected channel stuffing claims as speculative hindsight. *Id.* (citing *Steckman,* 143 F.3d at 1298). Still other courts have recognized that "[t]here is nothing inherently improper in pressing for sales to be made earlier than in the normal course." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 202 (1st Cir.1999).

---

**19.** Defendants have not raised a Rule 11 objection to Plaintiffs' Complaint. While the requirements of Rule 11 and the PSLRA may be related, the Court concludes they are not interchangeable.

After reviewing Class Plaintiffs' allegations related to channel stuffing, the Court concludes that Class Plaintiffs have failed to adequately plead a claim based on their channel stuffing allegations. To the extent that Class Plaintiffs claim that Defendants convinced dealers to purchase cars and then offered inadequate incentives causing sales to decline and inventory to remain stagnant, Plaintiffs have failed to state an actionable securities claim. *See e.g. In re Delmarva Sec. Litig.,* 794 F.Supp. 1293, 1307 & n. 22 (D.Del.1992). In *Delmarva,* the court concluded that allegations that a company over-expanded its business over the short term to inflate earning thereby exposing the company to a risk of losses is nothing more than an inactionable allegation of corporate mismanagement. *Id.; In re Campbell Soup Co. Sec. Litig.,* 145 F.Supp.2d 574, 588 (D.N.J.2001) (rejecting "loading claim," because there is nothing inherently fraudulent about pressing for earlier sales and the plaintiffs have not alleged that the loading in and of itself was fraudulent).

Although Class Plaintiffs do not address the *Delmarva* case or any other legal authority related to their channel stuffing claims, Class Plaintiffs presumably seek to distinguish their case by alleging that the underlying channel stuffing was based on a sham incentive program designed to hide Chrysler's deteriorating performance until Defendants' alleged take-over of the Company was completed. However, Class Plaintiffs' allegations in this regard are conclusory and non-specific. Class Plaintiffs offer insufficient factual allegations to support their conclusion that the incentive program was a sham, and virtually no factual allegations to support their conclusion that the lack of an incentive program or the alleged channel stuffing were linked to Defendants' alleged takeover of Chrysler. Further, Class Plaintiffs do not identify the sources for their allegations as discussed previously. (Amended Class Cmplt. at ¶¶ 85–90). Accordingly, for these additional reasons, the Court will dismiss Class Plaintiffs' claims based upon their channel stuffing allegations.

3. Whether the allegations concerning the December 1999 press releases and the 1999 Form 20–F fail to identify actionable misstatements or omissions

■ Defendants next contend that Class Plaintiffs' allegations concerning the December 1999 press releases and the 1999 Form 20–F fail to identify actionable misstatements or omissions. According to Defendants, the statements identified by Class Plaintiffs in the press releases are mere expression of optimism and puffery, and such statements are not actionable.

In response, Class Plaintiffs contend that the statements in the press releases were not mere puffery, because Defendants knew as early as 1999, that sales for Fiscal Year 2000 would be radically undercut, thereby rendering their representations in the 1999 press releases and the Form 20–F false and misleading. Specifically, Class Plaintiffs point out that they have pled, by relying on an article in *Forbes,* that these sales concerns were conveyed to Mr. Schrempp and the DaimlerChrysler Management Board by Chrysler Group's President, Jim Holden.

Class Plaintiffs apparently do not challenge the past recitations of the Company's performance in the press releases and annual reports, but only those forward-looking statements. Specifically, in the Amended Class Complaint, Class Plaintiffs highlight the following language in a 1999 press release:

DaimlerChysler expects further increases in sales and revenues in 2000, based on today's projections. The company

anticipates that the positive momentum in its automotive products and services will continue next year.

We are well prepared for the year 2000 and the years ahead.

(Amended Class Cmplt. at ¶ 82). Class Plaintiffs further challenge statements in DaimlerChysler's annual report for the fiscal year ending December 31, 1999 which forecasted "generally favorable economic conditions" for year 2000 and indicated that the Chrysler Group "expects to strengthen its position in the extremely competitive automobile market in the NAFTA region with the renewal of almost half of its product portfolio over the next two years." (Amended Class Cmplt. at ¶ 83).

The Third Circuit has recognized that vague, non-specific statements of optimism or hope by corporate managers are inactionable in a securities fraud case. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1427. Such statements are considered "puffery" and are deemed immaterial as a matter of law, because they are unlikely to have significantly altered the total mix of information made available to investors. *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 538 (3d Cir.1999); *In re Burlington Coat Factory*, 114 F.3d at 1427.

After considering the statements identified by Class Plaintiffs, the Court concludes that these statements are the type of non-specific and vague expressions of hope and optimism which the Third Circuit has found immaterial as a matter of law. Class Plaintiffs contend that these statements are actionable, because Defendants allegedly knew that the outlook was not positive and that profitability and sales were dropping, particularly in light of their knowledge regarding the alleged channel stuffing. In the Court's view, Class Plaintiffs offer little more than conclusory and non-specific allegations that Defendants

actually knew their optimistic "predictions" were false. For example, Class Plaintiffs allege that certain Chrysler executives warned Defendants of their concerns about the Company's performance, however, Class Plaintiffs do not name these executives, do not provide any information about when, where and to whom these warnings were made, and do not allege the sources from which these allegations are derived. (Amended Class Cmplt. at ¶ 80).

Similarly, Class Plaintiffs attempt to tie their channel stuffing allegations to their claims of misrepresentations in the 1999 press releases and annual report by alleging that Defendants must have known that their statements were false, because they were improperly stuffing the channels. However, Class Plaintiffs' channel stuffing allegations suffer from the defects pointed out by the Court earlier. Accordingly, the Court will dismiss Class Plaintiffs' claims as they relate to the December 1999 press release and annual report, because the statements identified by Class Plaintiffs are vague expressions of corporate optimism which are immaterial as a matter of law. Having concluded that Class Plaintiffs cannot state a claim based on the misrepresentations contained in the 1999 press releases and annual report, the Court will dismiss Class Plaintiffs' claims for violation of the GAAP principles premised upon those documents.

4. Whether the Amended Class Complaint fails to allege facts giving rise to a strong inference of scienter

■■■ Defendants contend that even if Class Plaintiffs have alleged actionable misstatements or omissions, they have not satisfied the requirement of pleading a strong inference of scienter required by the PSLRA. With regard to Plaintiffs' claims based on the 1999 press releases

and annual reports, Defendants contend that Class Plaintiffs have not adequately alleged that Defendants knew in 1999 that their sales for the latter part of 2000 would decline. Defendants further contend that Plaintiffs have failed to plead scienter for their channel stuffing claims, because their attempts to link the alleged channel stuffing to Defendants' alleged take-over of Chrysler are unsupported by adequate factual allegations.

In response, Class Plaintiffs address scienter only as it pertains to their claims based on the 1999 press releases and annual reports. Because the Court has previously concluded that Class Plaintiffs have not identified actionable misstatements or omissions based on those documents, the Court will not address the issue of scienter as it relates to those claims.

As for Class Plaintiffs' other allegations of channel stuffing, the Court concludes that Class Plaintiffs' have failed to adequately plead a strong inference of scienter. Scienter may be sufficiently pled by alleging facts that establish "a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior." Allegations of motive must be supported by facts stated with particularity. *Id.* As the court in *Greebel* recognized allegations of channel stuffing alone are insufficient to support a strong inference of scienter. *Greebel*, 194 F.3d at 202 (recognizing that "there is nothing inherently improper in pressing for sales to be made earlier than in the normal course [of business]").

To the extent that Class Plaintiffs allege scienter by suggesting that Defendants' motive to channel stuff was to "mask Chrysler's deteriorating performance while [Defendants] completed their takeover," the Court concludes, as discussed previously, that Class Plaintiffs' allegation is

conclusory and unsupported by sufficient factual allegations. Indeed, even the *Forbes* article, upon which Class Plaintiffs primarily rely for their channel stuffing allegations, does not support Class Plaintiffs' allegation that the alleged channel stuffing was part and parcel of Defendants' alleged scheme to take control of Chrysler.

Further, the Court agrees with Defendants that this alleged motive is tenuous and somewhat illogical. To demonstrate motive, a plaintiff must show "concrete benefits that could be realized as a result of a defendants' deceptive practices." *In re CDnow, Inc. Sec. Litig.*, 138 F.Supp.2d 624, 642 (E.D.Pa.2001). "Alleging facts 'that lead to a strained and tenuous inference of motive is insufficient to satisfy' Rule 9(b) and the PSLRA." *Id.* (citations omitted). Assuming that Defendants' motive for using channel stuffing to hide the Company's true financial condition was to facilitate the completion of its take-over of Chrysler, it seems to the Court that the Company's allegedly deteriorating financial condition would have made the job easier by justifying the subsequent management changes. *Id.* (rejecting the plaintiffs' allegations of motive, because they were "illogical"). Because Class Plaintiffs have failed to plead facts giving rise to a strong inference of scienter, the Court will dismiss Class Plaintiffs' claims based upon their channel stuffing allegations.

5. Whether the Amended Class Complaint fails to allege particularized facts inculpating the individual Defendants in the alleged fraud

Defendants further contend that Class Plaintiffs cannot state a Section 10(b) claim against Defendants Schrempp and Gentz, because they have not identified any false or misleading statements made by these

defendants in connection with the alleged channel stuffing. (D.I. 58 at 30). Defendants contend that Plaintiff's allegations regarding these Defendants are an attempt at "group pleading" which is precluded under the Exchange Act.

As a threshold matter, it appears to the Court that Class Plaintiffs do not raise a Section 10(b) claim against Defendant Gentz. Rather, Class Plaintiffs' Section 10(b) claim is directed only to Defendants Daimler–Benz, DaimlerChrysler and Schrempp. Thus, Defendants' argument appears to be relevant only insofar as it applies to Defendant Schrempp's involvement in the alleged channel stuffing.

Under the "group pleading doctrine," a plaintiff treats individual defendants as part of a group for pleadings purposes. Typically, group pleading is used "to attribute group-published information to senior executives of a corporate defendant." *Marra v. Tel–Save Holdings, Inc.*, 1999 WL 317103, *5 (E.D.Pa. May 18, 1999) (citations omitted). When group pleading is utilized by a plaintiff "the identification of the individual sources of statements is unnecessary when the fraud allegations arise from the misstatements or omissions in group-published documents, such as annual reports, prospectuses, registration statements, press releases or other 'group-published information' that presumably constitute the collective actions of those individuals involved in the day-to-day affairs of the corporation." *Id.* (citations omitted).

The question of whether group pleading is precluded under the Exchange Act is not as firmly established as Defendants suggest in their briefing. The Court of Appeals for the Third Circuit has not yet addressed the issue, and courts that have considered the issue are split with a majority concluding that the group pleading doctrine has survived the PSLRA. *In re Raytheon Sec. Litig.*, 157 F.Supp.2d 131, 152 (D.Mass.2001) (collecting cases). In this circuit treatment of the issue has varied with some courts concluding that the group pleading doctrine does not survive the PSLRA, and others assuming that the group pleading doctrine is still viable. *See e.g. Marra*, 1999 WL 317103 at * 5 (concluding that group pleading doctrine did not survive PSLRA); *In re Aetna Inc. Sec. Litig.*, 34 F.Supp.2d 935, 949 n. 7 (E.D.Pa. 1999) (assuming without analysis that group pleading doctrine is still viable).

In this case, the parties have not thoroughly briefed and argued the question of whether the group pleading doctrine survives the PSLRA. Although Defendants state, without analysis, that the group pleading doctrine is no longer viable in their Opening Brief, in their Reply Brief, Defendants focus their argument on whether, assuming the group pleading doctrine applies, Class Plaintiffs' allegations are sufficient. In light of the Court's conclusion regarding the inadequacies of Class Plaintiffs' channel stuffing allegations, the Court need not determine whether Class Plaintiffs have adequately linked Defendant Schrempp to their channel stuffing allegations. Accordingly, for the reasons discussed previously, the Court will dismiss Class Plaintiffs' claims based on their channel stuffing allegations.

## CONCLUSION

For the reasons discussed, the Court will (1) deny Defendants' Motion To Dismiss the Glickenhaus Complaint; (2) grant Defendants' Motion To Dismiss the civil conspiracy claim alleged in the Tracinda Complaint, and deny the Motion To Dismiss the remaining claims in the Tracinda

Complaint; and (3) grant Defendants' Motion To Dismiss the Amended Class Complaint for failure to meet the requirements for pleading allegations based upon information and belief under 15 U.S.C. § 78u–4(b)(1), and failure to state a claim based on channel stuffing.

An appropriate Order will be entered.

## *ORDER*

At Wilmington, this 22nd day of March 2002, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendants' Motion To Dismiss (D.I.57) the Glickenhaus Complaint is DENIED.

2. Defendants' Motion To Dismiss (D.I.57) the Tracinda Complaint is GRANTED with respect to the claim for civil conspiracy and DENIED in all other respects.

3. Defendants' Motion To Dismiss (D.I.57) the Amended Class Complaint is GRANTED for failure to meet the requirements for pleading allegations based upon information and belief under 15 U.S.C. § 78u–4(b)(1) and failure to state a claim based on channel stuffing.